CONFEDERATED TRIBES OF THE COLVILLE RESERVATION, Mel Tonasket, Chairman; Colville Business Council; Colville Tribal Court, itself and enrolled members of the Tribes, Judy Pearson, Desiree S. Freund and Keenan A. Freund, Plaintiffs–Appellants,

and

Robert Freund, Intervenor,

v.

SUPERIOR COURT OF OKANOGAN COUNTY, the Honorable James R. Thomas and the Honorable David Edwards; James Weed, Okanogan County Sheriff; and Peter Sirois, Omak Chief of Police, Defendants–Appellees.

No. 89–35829.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1990.

Decided Oct. 3, 1991.

Alan C. Stay, Reservation Atty., Colville Federation Tribes, Nespelem, Wash., for plaintiffs-appellants.

David E. Walsh, Deputy Atty. Gen., Olympia, Wash., for defendants-appellees.

Before HUG, and D.W. NELSON, Circuit Judges, and CARROLL, District Judge.*

D.W. NELSON, Circuit Judge:

Appellants, the Confederated Tribes of the Colville Reservation (the "Tribes"), seek declaratory and injunctive relief against appellees, Okanogan Superior Court, Judge James Thomas and Commissioner David Edwards. They challenge the Superior Court's holding that the Colville Tribes had been divested of civil authority to decide domestic matters by virtue of a federal statute, Public Law 280. The district court granted partial declaratory relief and dismissed the action in all other respects for want of jurisdiction. We vacate the grant of partial declaratory relief, and affirm in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

There is a long and tortuous way from the origins of this case to its ultimate advent in this court. The facts leading up to this appeal grow out of a custody dispute between two individuals, neither of whom is involved in this litigation. Robert Freund and Judy Pearson, although never married, lived together and had two children: Desiree, born in 1984 in Portland, Oregon, and Keenan, born in 1985 in Vancouver, Washington. Ms. Pearson and her children are enrolled members of the Colville Tribes; Mr. Freund is not. When discord between the couple erupted in 1987, Ms. Pearson moved to the Colville Reservation, taking her two children along with her. Mr. Freund was guaranteed visitation rights by virtue of a private agreement.

Amidst allegations that Robert Freund physically abused Desiree and Keenan during visitations, Judy Pearson filed a petition in tribal court seeking custody of her children. The tribal court entered a Temporary Restraining Order ("TRO") and awarded temporary custody of the children to their mother. Ms. Pearson subsequently began an action in state court to enforce the TRO.

The seeds of the jurisdictional dispute were planted soon thereafter. On November 3, 1987, Robert Freund commenced a separate custody proceeding in Okanogan Superior Court, a Washington state court. The following day, the Colville Tribes, suspecting child abuse and mindful of the parallel proceedings in superior court, filed a petition in tribal court to determine whether the children were "in need of care" and should be made wards of the Tribe. On January 11, 1988, the tribal judge concluded that the children were Minors-in-Need-of-Care pursuant to the Indian Child Welfare Act [ICWA], codified at 25 U.S.C. §§ 1901 *et seq.*[1]

During the pendency of these proceedings, the superior court entered a number of orders that conflicted with the tribal court's earlier orders and with the results of the ICWA proceedings. First, Judge Thomas held that the tribal court had no jurisdiction to determine Mr. Freund's parental rights. Second, the court commissioner granted Robert Freund temporary custody of the children.

On February 5, 1988, the Tribes filed the instant action in federal court and sought a temporary restraining order against implementation of the superior court's custody decree which was granted immediately. In

---

* Honorable Earl H. Carroll, United States District Judge for the District of Arizona, sitting by designation.

1. On January 5, 1989, the tribal court entered a final decree granting permanent custody to Ms. Pearson which Mr. Freund has appealed.

essence, the Colville Tribes requested (1) a declaration that the Tribes had exclusive jurisdiction under the ICWA over the Minor-in-Need-of-Care issue; (2) a declaration that the Tribes had at least concurrent jurisdiction with the state court to adjudicate the larger custody matter; (3) an injunction enjoining the defendants from taking any action in violation of the tribal court's orders.

On July 26, 1988, Judge Thomas reversed his prior order and recognized that the tribal court enjoyed exclusive jurisdiction over the Minor-in-Need-of-Care cases pursuant to the ICWA. However, he continued to maintain that the state of Washington had exclusive jurisdiction over the broader custody dispute. The superior court held that the state assumed its jurisdiction pursuant to Pub.L. 280, and that such jurisdiction was exclusive.[2]

■ Defendants Thomas and Edwards filed a motion to dismiss the Tribes' actions, and the Tribes filed a motion for summary judgment. In light of Judge Thomas' self-reversal on the ICWA question, the only issue remaining concerned the tribal court's jurisdiction to adjudicate the custodial rights of member and non-member parents.[3]

The district judge traced the factual imbroglio leading to this action and the jurisdictional problems involved. He noted that the case had undergone "a major transmogrification" since its inception; all that survived was the request for a declaratory judgment to the effect that:

> Public Law 280, [28 U.S.C. § 1360] does not divest the Colville Tribes of its preexisting jurisdiction to govern the domestic relations of its members, to establish marriages, dissolve them and make custodial decisions of all children of marriages that are otherwise subject to the jurisdiction of the Colville Tribal Court.

In light of these facts, the district court ruled that it lacked jurisdiction on several grounds. Among other reasons, the court noted that Judge Thomas' order in state court, interpreting Pub.L. 280 to deprive the tribal court of jurisdiction to enter child custody awards, was merely interlocutory. It also noted that, since that order had been entered, our circuit had rendered its decision in *Sanders v. Robinson*, 864 F.2d 630 (9th Cir.1988), *cert. denied*, 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1028 (1989), and that the case could have a bearing on the state court's ultimate holding.[4]

---

2. Pub.L. 280 provides in pertinent part:

   Each of the States listed ... shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed ... to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State.

   28 U.S.C. § 1360(a).

   Although Washington was not one of the original states included in the statute, Pub.L. 280 authorized other states to assume such jurisdiction if they so desired. *See* Pub.L. 280, sec. 7. In 1963, the State of Washington assumed jurisdiction over Indians and Indian territory within the State in a number of areas, including domestic relations. *See* R.C.W. § 37.12.010; *see also Washington v. Yakima Indian Nation*, 439 U.S. 463, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979) (upholding Washington's partial assumption of jurisdiction).

3. As the district court made clear, the question of the Tribes' exclusive jurisdiction under the ICWA became a "non-issue." In other words,

the tribal court enjoys exclusive jurisdiction over all issues relating to "child dependency"—such as the Minor-in-Need-of-Care proceedings. However, "child custody" under the ICWA is strictly defined. *See* 25 U.S.C. § 1903. It does not include the resolution of the longer-term custody dispute between the parents.

4. *Sanders* held that a "tribal court had jurisdiction over [a] marriage dissolution action between an Indian plaintiff and a non-Indian defendant residing on the reservation" where the couple and their children all resided on the reservation during the marriage. 864 F.2d at 634. The case did not involve the impact of Pub.L. 280 because Montana, the state involved in *Sanders*, had not chosen to assume jurisdiction under Pub.L. 280.

   Since the district court's decision was rendered, this court has held in *Native Village of Veneite I.R.A. Council v. State of Alaska*, 944 F.2d 548 (9th Cir.1991), that Pub.L. 280 did not divest tribal courts of concurrent jurisdiction over child custody matters; *see also Walker v. Rushing*, 898 F.2d 672, 675 (8th Cir.1990) ("[n]othing in the wording of Public Law 280 or its legislative history precludes concurrent tribal authority").

The district court did, however, grant the Tribes declaratory relief, instructing the Superior Court to give effect to *Sanders* in future proceedings. The lawsuit was dismissed in all other respects. Thereafter, the Tribes filed this timely appeal.[5]

## DISCUSSION

### I. Standard of Review

■ We review a district court's jurisdictional determination *de novo*. *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

### II. Jurisdiction

■ The jurisdictional issues presented in this case are complex and interrelated. The district court chose to address a variety of possible jurisdictional issues in a series of alternative holdings. We need address only one jurisdictional barrier to appellants' action, and we express no opinion on the others.

At the outset, we must recognize the unusual posture of this case. The relief requested by appellants is a declaratory judgment designed to affect the course of a lawsuit involving two parties not represented here. Further, the declaratory judgment sought by the Tribes is a de facto horizontal appeal from state to federal court, an appeal brought by a non-party. Finally, this horizontal appeal is taken not of a final decision, but of one of the grounds mentioned by a state court to justify an interlocutory order that did not even dispose of the custody issue at hand.

A federal court declaratory judgment is simply not the proper means to untangle this jurisdictional knot. Although we have not found any precedent precisely matching the odd circumstances of this dispute, principles derived from numerous cases compel this conclusion.

■ Appellants seek a declaratory judgment from a federal district court that a state court's interpretation of a federal statute was unlawful, before the intermediate and highest appellate courts of Washington have had the opportunity to review that decision. This action misconceives the relationship between state and federal courts in our system of government. The Tribes may legitimately object to the way in which the state court resolved Ms. Pearson's claims. But "lower federal courts possess no power whatsoever to sit in direct review of state court decisions." *Atlantic Coast Line R.R. v. Locomotive Engineers*, 398 U.S. 281, 296, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970). The supremacy clause of the Constitution requires state judges to discern and apply federal law where it is controlling. Appellants ask us in essence to presume they will not do so unless a federal court tells them to. This we cannot do. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987); *accord District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 484 n. 16, 103 S.Ct. 1303, 1316 n. 16, 75 L.Ed.2d 206 (1983).

■ Federal review can occur, of course, but only in the Supreme Court, on appeal or by writ of certiorari. *Pennzoil*, 481 U.S. at 24, 107 S.Ct. at 1532 (Marshall, J., concurring); *Feldman*, 460 U.S. at 483–84 n. 16, 103 S.Ct. at 1315–16 n. 16; *Elks Nat'l Foundation v. Weber*, 942 F.2d 1480, 1483 (9th Cir.1991). Thus, Ms. Pearson (or the Tribes if they are made a party) may seek a final judicial determination in the Washington state courts. If the final decision of the highest state court is adverse, they may petition the Supreme Court for certiorari on their federal claims. But, so long as they have an adequate forum in state court, they cannot seek relief in a lower federal court.[6] *See Mendez v. Heller*, 530 F.2d 457, 461 n. 2 (2d Cir.1976) (Oakes, J., concurring) (Supreme Court review "assures that ultimate federal review is available, and, of course, the state courts are bound to apply the United States Constitution as the supreme law of the land").

5. The state of Washington has filed an amicus brief opposing the relief sought by the Tribes.

6. Under certain circumstances, if the state court refused or was unable to provide an adequate forum for hearing a federal claim, federal review would be appropriate. *Cf. Standard Alaska Production Co. v. Schaible*, 874 F.2d 624, 627–30 (9th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1923, 109 L.Ed.2d 287 (1990).

It is well-established that declaratory judgments cannot fill in for appeals, let alone substitute for an appeal when no appeal could be taken. *See In re Braughton,* 520 F.2d 765, 766–77 (9th Cir.1975); *Tanner Motor Livery, Ltd. v. Avis, Inc.,* 316 F.2d 804, 810 (9th Cir.), *cert. denied,* 375 U.S. 821, 84 S.Ct. 59, 11 L.Ed.2d 55 (1963). Because there could have been no appeal in federal court, there could be no declaratory judgment either.

The district court was correct in dismissing this case for want of jurisdiction. For the same reasons it dismissed most of appellants' case, though, it should have dismissed the entire case. We therefore vacate the limited declaratory relief, and affirm the district court in all other respects.

AFFIRMED and VACATED IN PART.