Mary DOE, Plaintiff,

v.

Arthur MANN in his Official Capacity, Robert L. Crone, Jr. in his Official Capacity, Lake County Superior Court Juvenile Division, Mr. D, Mrs. D. and Department of Social Services of Lake County, Defendants.

No. C 02–3448 MHP.

United States District Court, N.D. California.

Sept. 29, 2003.

Henry Weismann, Esq., Munger Tolles & Olson, LLP, Los Angeles, CA.

Jeffrey L. Bleich, Munger Tolles & Olson, San Francisco, CA.

Truc–Linh N. Nyguyen, Esq., Arnold & Porter, Los Angeles, CA.

Alicia C. Park, Esq., Law Office of Nicholas G. Soter, San Francisco, CA.

CAmeron L. Reeves, Lake County Counsel, Lakeport, CA.

Mr. D., Nice, CA.

Mrs. D., Nice, CA.

Elem Indian Colony of Pomo Indians, Delbert Thomas, Clearlake, CA.

## OPINION

PATEL, Chief Judge.

Plaintiff Mary Doe ("Doe") brings an action against defendants Arthur Mann and Robert L. Crone, Jr. in their official capacity as California Superior Court judges, Lake County Superior Court's Juvenile Division, Mr. and Mrs. D., and the Department of Social Services of Lake County ("DSS"). Doe alleges that the state child custody proceedings involving her daughter, Jane Doe ("Jane"), violated the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1901 *et seq.,* the Due Process Clause, and state child custody law. Now before the court are two separate motions, one brought by Mann, Crone and the Superior Court (collectively "state court defendants") and the other by DSS, to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mr. and Mrs. D, Jane's adoptive parents, join in both motions. Having considered the arguments presented, and for the reasons set forth below, the court rules as follows.

*BACKGROUND* [1]

Doe is a member of the Elem Indian Colony in Lake County, California. Her

---

1. Unless otherwise specified, facts are taken from plaintiff's complaint.

daughter Jane is also eligible for tribal membership. Except for two brief periods, Jane lived on the tribe's reservation. In April 1998, when Jane was five, she began living with Doe's aunt and Doe's brother and his wife. Jane confided to her mother on June 8, 1999, that she had been sexually abused on several occasions by a male cousin. Doe called DSS the next day to request abuse services for her daughter. By the end of the day, DSS had removed Jane from her relatives' home.

On June 14, 1999, DSS initiated a petition under section 300 of the California Welfare and Institutions Code ("WIC"), alleging that Doe inadequately protected and supervised Jane by failing to provide alternate living arrangements when Doe knew or should have known that Jane could be sexually abused. Notice of the hearing and petition was sent to the home of Doe's aunt. Doe did not appear at the hearing. Superior Court Judge Mann, who conducted the hearing on the petition, determined that Jane should be placed in DSS custody.

On June 22, 1999, DSS mailed a "Notice of Involuntary Child Custody Proceeding Involving an Indian Child" to a post office box that Doe allegedly did not own and could not access. The hearing concerned the court's jurisdiction over Jane under section 300 of WIC. When Doe did not appear at the hearing, Judge Mann continued the matter to July 26, 1999. Doe again alleges that she did not receive proper notice about the continuance and so was not present. At the hearing on July 26, Judge Mann found that the court had jurisdiction but did not make any findings concerning Jane's status as an Indian child under ICWA.

On August 9, 1999, Doe appeared in court for the first time for a hearing on the appropriate disposition of Jane under WIC section 358. Judge Mann appointed Robert Wiley as Doe's counsel. The hearing was then continued several times until October 4, 1999. Doe alleges that she did not attend the October 4 hearing because she did not receive proper notice from anyone, including her attorney. At the disposition hearing, Judge Mann determined that Jane was a dependent child of the court and requested that DSS place her in foster care. DSS placed Jane with Mr. and Mrs. D., who are not members of the Elem Indian Colony. Doe had requested that Jane be placed with Doe's great aunt, an Elem Indian who had a licensed foster care home. DSS also did not grant foster placement preference to Doe's brother and his wife, who wanted to adopt Jane.

At a status review hearing on March 27, 2000, Judge Mann ended DSS services designed to reunify Doe and Jane. Doe did not attend this hearing because notice was allegedly sent to the same post office box that she could not access. After several continuances, Judge Mann held a hearing on February 16, 2001 in which he terminated Doe's parental rights under WIC section 366.26. Doe allegedly did not receive proper notice of the hearing and thus did not attend. Two expert witnesses gave conflicting testimony about the best interests of Jane. An ICWA consultant stated that Jane should remain with her mother, while the DSS expert witness recommended placement with Mr. and Mrs. D. Doe alleges that the DSS expert not have knowledge about tribal family customs or the prevailing social and cultural standards of childrearing in the Elem Indian Colony.

On November 17, 2000, the Elem Indian Colony Tribal Council issued a tribal resolution declaring that the tribe's prevailing social and cultural standards, as well as Jane's interests, would best be served by placing her for adoption with Doe's brother and sister-in-law. On September 28, 2001, however, Judge Crone granted the

request by Mr. and Mrs. D. to adopt Jane. Judge Mann then dismissed Jane's dependency petition on October 3, 2001.

## LEGAL STANDARD

### I. 12(b)(1) Motion

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). When, as here, defendants bring a facial attack to a court's subject matter jurisdiction, the court construes allegations in the complaint in the light most favorable to the plaintiff but does not infer allegations to support jurisdiction. *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.,* 813 F.2d 1553, 1558–59 (9th Cir.1987). The court looks to the complaint and attached documents, as well as to facts that are judicially noticeable or undisputed. *Id.* Plaintiff bears the burden of establishing jurisdiction. *Thompson v. McCombe,* 99 F.3d 352, 353 (9th Cir.1996).

### II. 12(b)(6) Motion

"It is axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997) (internal quotes omitted). Such dismissal is only proper in "extraordinary" cases. *United States v. Redwood City,* 640 F.2d 963, 966 (9th Cir. 1981). The motion will be denied unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus. Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995); *Fidelity Fin. Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

## DISCUSSION

Doe alleges in her complaint that the California Superior Court lacked jurisdiction over the proceedings because ICWA grants exclusive jurisdiction over such civil actions to Indian tribes. In the alternative, Doe alleges that the state court defendants and DSS violated myriad procedural and substantive requirements in sections 1911, 1912, and 1915 of ICWA. Doe also brings a claim against the state court defendants under section 1983, 42 U.S.C. § 1983, alleging that ineffective assistance of counsel denied Doe the right to due process under the Fourteenth Amendment. Finally, Doe claims that DSS did not properly follow WIC requirements during the proceedings.

In this motion, defendants first contend that this court does not have subject matter jurisdiction because the *Rooker–Feldman* doctrine prohibits inferior federal courts from reviewing state court decisions. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Secondly, defendants argue that the action is barred by principles of preclusion. Even if the action is not precluded, defendants contend thirdly that the state court had jurisdiction over the underlying child custody proceedings pursuant to the Act of Aug. 15, 1953, Pub.L. No. 83–280, 67 Stat. 588 (codified at 18 U.S.C. § 1163; 28 U.S.C. § 1360(a)), commonly known as Public Law 280. Fourthly, defendants argue that the state proceedings comported with ICWA requirements. Finally, defendants contend that Doe's section 1983 claim is barred by the one-year statute of limitations, and ask this court to strike the

request for attorneys' fees against Superior Court Judge Mann.

## I. *Rooker–Feldman Doctrine*

■ The Ninth Circuit recently explained the *Rooker–Feldman* doctrine as follows: "If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction." *Bianchi v. Rylaarsdam,* 334 F.3d 895, 898 (9th Cir.2003). A federal court must focus on the nature of the relief sought. *Id.* at 900. If a disgruntled plaintiff seeks to "undo" a state court's decision, a federal court cannot hear the action even though her claims may not have been fully and fairly litigated in state court. *Id.* at 901.

As an en banc panel of the Ninth Circuit made clear in *In re Gruntz,* 202 F.3d 1074, 1078 (9th Cir.2000), however, the *Rooker–Feldman* doctrine is not required by the Constitution. Instead, the doctrine "arises out of a pair of negative inferences drawn from two statutes": the grant of original jurisdiction over actions "arising under" federal law to district courts, 28 U.S.C. § 1331, and the grant of appellate jurisdiction over decisions by the highest state courts to the U.S. Supreme Court, 28 U.S.C. § 1257. *In re Gruntz,* 202 F.3d at 1078. Congress has explicitly granted federal district courts the power to collaterally review state court decisions through habeas corpus and bankruptcy petitions. *Id.* Indeed, the Supreme Court long ago recognized that Congress, "because its power over bankruptcy is plenary, may by specific bankruptcy legislation" allow collateral attacks on state court judgments. *Kalb v. Feuerstein,* 308 U.S. 433, 438–39, 60 S.Ct. 343, 84 L.Ed. 370 (1940). Similarly, Congress has plenary power over Indi-

an affairs, U.S. Const. art. I, § 8, cl. 3, a power understood to extend to "the special problems of Indians," *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).

Because Doe asks this court to reverse a state court judgment, the *Rooker–Feldman* doctrine would normally bar review of the action. Section 1914 of ICWA, however, explicitly provides for review of certain child custody proceedings. "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Doe is clearly requesting this court to "invalidate" the state court's termination of her parental rights and placement of Jane in foster care. "Invalidation" by definition requires the court to revisit the state court proceeding and overturn the decision. In addition, by a process of elimination, a "court of competent jurisdiction" must include inferior federal courts, or the provision is meaningless. If the section only referred to state appellate courts, there would be no need for Congress to create this cause of action; Doe already has the right to appeal an adverse decision to California's higher courts. It is highly unlikely that the provision grants tribal courts the power to invalidate state court judgments.

There are no reported cases addressing the applicability of the *Rooker–Feldman* doctrine to a claim under section 1914 of ICWA. In *Confederated Tribes of the Colville Reservation v. Superior Court,* 945 F.2d 1138, 1141 (9th Cir.1991), this Circuit held that the *Rooker–Feldman* doctrine

barred a tribe from seeking a declaration that a tribal court had concurrent jurisdiction over a custody proceeding, when a state court previously declared it had exclusive jurisdiction. The Circuit did not consider section 1914 or its relationship to the *Rooker–Feldman* doctrine; thus, its decision is not necessarily applicable to the action at bar. Moreover, the court emphasized that it was loathe to "untangle this jurisdictional knot" when the parties in the custody proceeding were not before the court and the tribe brought an appeal "not of a final decision, but one of the grounds mentioned by a state court to justify an interlocutory order that did not even dispose of the custody issue at hand." *Id.* None of these "tangles" apply to this action.

Allowing a collateral attack to state court child custody proceedings is in keeping with both federal Indian jurisprudence and the intent of ICWA. In interpreting ICWA, this Circuit has emphasized the " 'unique trust relationship between the United States and the Indians.' " *Native Village of Venetie I.R.A. Council v. Alaska,* 944 F.2d 548, 553 (9th Cir.1991) (quoting *Oneida County v. Oneida Indian Nation,* 470 U.S. 226, 247, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985)). Statutory provisions are to be "construed liberally in favor of the Indians; ambiguous provisions are to be interpreted to the Indians' benefit." *Id.* Moreover, ICWA "was the product of rising concern" over the states' widespread practice of taking Indian children from their families and placing them in non-Indian homes and institutions. *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 32, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). In an opening paragraph of ICWA, Congress declared: "States, exercising their recognized jurisdiction ... have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families." 25 U.S.C. § 1901(5). This court finds that section 1914 grants federal courts the power to review state custody proceedings such as those here; therefore, the *Rooker–Feldman* doctrine does not apply to the action at bar.

## II. *Preclusion*

■ Defendants urge this court to accept the reasoning of two Tenth Circuit cases that barred relief based on res judicata and collateral estoppel. In *Kiowa Tribe of Okla. v. Lewis,* 777 F.2d 587, 592 (10th Cir.1985), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986), the Tenth Circuit determined that a tribe could not relitigate the applicability of ICWA in federal court after appealing the state district court's decision to the state supreme court and gaining a full hearing on the matter. In so ruling, the Tenth Circuit found that section 1914 did not act as an implied repeal of the full faith and credit doctrine, 28 U.S.C. § 1738. 777 F.2d at 592. The Tenth Circuit later held that a tribe was barred by collateral estoppel from re-litigating the tribe's exclusive jurisdiction under ICWA, an issue the same parties fully briefed in front of the state district court. *Comanche Indian Tribe of Okla. v. Hovis,* 53 F.3d 298, 303 (10th Cir.), *cert. denied,* 516 U.S. 916, 116 S.Ct. 306, 133 L.Ed.2d 210 (1995). Once again, the Tenth Circuit found that section 1914 of ICWA was not "an independent ground to relitigate state court decisions. Once the Tribe chose to litigate in State Court, review of the State Court's decision was limited to timely appeal to the state appellate courts and was not 'appealable' in federal district court." *Id.* at 304.

The court is not persuaded that *Kiowa* and *Comanche* should apply to this action. In those cases, the plaintiff tribes had fully litigated the issues in front of a state court, lost, and then tried to have another "bite

at the apple" in federal court. In contrast, it appears the issues in this action were never raised in the California Superior Court. For example, Doe claims that the tribe had exclusive jurisdiction over these proceedings, an issue that the state court did not consider. Even Doe's claims that the Superior Court misapplied ICWA's requirements by, for example, providing inadequate notice and not giving full faith and credit to a tribal resolution, were not disputed in the underlying state action. Under section 1914, Congress specifically provided a cause of action to invalidate any state court action that did not meet the requirements of sections 1911, 1912 or 1913. Applying the principles of preclusion to alleged irregularities in the state custody proceedings, when the issues were not fully briefed and adjudicated, does not serve the judicial interest in efficiency or finality.

Beyond citing these cases, neither the state court defendants nor DSS make any effort to explain how the relevant state law elements of res judicata and collateral estoppel are met in this action. Because defendants have not met their burden, the action is not precluded.

### III. *Tribal Jurisdiction under ICWA*

■ Because Public Law 280 states such as California have jurisdiction over child custody proceedings, defendants contend that plaintiff fails to state a claim for exclusive jurisdiction over the proceedings by the Elem Indian Colony. Resolving this dispute—which is solely a matter of statutory interpretation—involves a complicated foray into the jurisdictional reach of Public Law 280 and Congress's understanding of that reach in ICWA.

Section 1911(a) of ICWA provides that "[a]n Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, *except where such jurisdiction is otherwise vested in the State by existing Federal law.*" 25 U.S.C. § 1911(a) (emphasis added). The primary federal law granting state courts jurisdiction over cases involving Indians is Public Law 280. Section 2 gives state courts in certain states jurisdiction over "criminal offenses committed by or against Indians" and section 4 gives jurisdiction over "civil causes of action between Indians or to which Indians are parties" that "arise in the areas of Indian country" listed in the law. 18 U.S.C. § 1162; 28 U.S.C. § 1360(a). "All Indian country" in California is subject to jurisdiction under section 4. 28 U.S.C. § 1360(a).

Plaintiff argues that Public Law 280 never granted jurisdiction to state courts for the kinds of state proceedings at issue in this action, namely termination of parental rights, foster care placement and adoptive placement. Surprisingly, in the twenty-five years since ICWA was enacted, no court has ruled on this issue. Defendant DSS claims that this Circuit, in holding that tribal villages and state courts had concurrent jurisdiction over child custody determinations in *Native Village of Venetie*, recognized state court jurisdiction under Public Law 280. The Circuit used broad language to describe jurisdiction under Public Law 280. *See* 944 F.2d at 555 ("For some tribes, the exclusive and referral jurisdiction provisions of sections 1911(a) and (b) became effective automatically following the enactment of [ICWA]. However, tribes located within so-called Public Law 280 states ... can invoke such jurisdiction only after petitioning the Secretary of the Interior."). *Native Village of Venetie*, however, concerned private adoptions. Noting that "[i]t is not disputed that private adoption cases are included within this [Public Law 280] transfer of civil jurisdiction from the federal government to the states," 944 F.2d at 560, the

Circuit did not explicitly address the proceedings at issue here. Thus, this court must conduct its own analysis.

Plaintiff relies on a series of cases narrowly interpreting Public Law 280's grant of civil jurisdiction to include only private civil actions. The courts examine the nature of the law to determine whether it is criminal or civil. Some laws, such as those assessing personal property taxes, are clearly civil laws by which the state seeks to regulate Indians. Thus, in *Bryan v. Itasca County,* 426 U.S. 373, 390, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976), the Court held that Public Law 280 did not grant the state jurisdiction to collect these taxes. The Court reasoned that Public Law 280's civil grant of jurisdiction "seems to have been primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes." *Id.* at 383, 96 S.Ct. 2102. Thus, the Court found that the "primary intent of section 4 [of Public Law 280] was to grant jurisdiction over private civil litigation involving reservation Indians in state court." *Id.* at 385, 96 S.Ct. 2102.

Plaintiff claims that because the state is a party to the child custody proceedings at issue in this action, it can in no way be viewed as a private civil litigant. Defendants reply that California's child welfare laws should be interpreted as criminal in nature because they prohibit child abuse and neglect. In *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 208, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987), the Court adopted a distinction between laws that are "criminal/prohibitory" and "civil/regulatory." Laws that are intended generally "to prohibit certain conduct" are considered criminal and thus fall under state court jurisdiction, while those laws that "generally permit[ ] the conduct at

issue, subject to regulation," are civil/regulatory and thus fall outside of state court jurisdiction. *Id.* at 209, 107 S.Ct. 1083. "The shorthand test is whether the conduct at issue violates the State's public policy." *Id.* In holding that restrictions on high stakes bingo are civil/regulatory, the Court interpreted the restrictions in light of the large amount of gambling activity permitted by California. *Id.* at 210, 107 S.Ct. 1083. "*Cabazon* focuses on whether the prohibited activity is a small subset or facet of a larger, permitted activity ... or whether all but a small subset of a basic activity is prohibited." *Confederated Tribes of Colville Reservation v. Washington,* 938 F.2d 146, 149 (9th Cir.1991) (finding speeding laws with civil penalties to be civil/regulatory), *cert. denied,* 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992).

*Cabazon* concerned a penal law that sanctioned violators with a misdemeanor. In the action at bar, there are no criminal penalties for violations of California law governing child custody proceedings. In *Confederated Tribes,* however, this Circuit examined the nature of the statute even though the traffic infraction at issue was not a criminal offense. Citing *Cabazon,* the *Confederated Tribes* court warned that "in an inquiry such as this we must examine more than the label itself to determine the intent of the State and the nature of the statute." *Id.* at 148.

Nothing in the state welfare laws at issue in the child custody proceedings or the manner in which the state conducts these proceedings indicates that the laws are by nature criminal. The state asserted jurisdiction over Jane under sections 300(b) and (d) of WIC. Section 300(d) gives the juvenile court jurisdiction over a child that "has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her

parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse." Cal. Welf. & Inst.Code § 300(d). As this section makes clear, child dependency proceedings stemming from sexual abuse rely on the criminal definition but are ultimately separate from criminal actions brought by the state under its penal laws. Further sections describe the responsibilities of the court in terminating parental rights, placing a dependent child in foster care, and accepting adoption petitions. The purpose of these provisions is to "provide maximum safety and protection for children," and the "focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child." *Id.* § 300.2. Nowhere does the statute cite as its purpose punishing the parent.

Defendants insist, however, that the conduct at issue should be considered criminal/prohibitory under *Cabazon* since the state prohibits parents from sexually abusing or neglecting their children by taking their children away. If this court were to focus on the narrow conduct of child abuse, the conduct could conceivably fall under the criminal/prohibitory category. Certainly child abuse violates California's public policy, as is clear from both the child welfare laws and penal laws. But *Cabazon* requires this court to inquire whether the prohibition is only one part of a larger regulatory scheme of permitted activity. Plaintiff argues that the state provision allowing a juvenile court to take jurisdiction over a sexually abused child should be seen in the context of the generally permitted activity of parenting. In fact, section 300(j) of WIC states that "nothing in this section [is intended to] disrupt the family unnecessarily or intrude inappropri-

ately into family life, prohibit the use of reasonable methods of parental discipline, or prescribe a particular method of parenting." Cal. Welf. & Inst.Code § 300(j). Seen in this light, the state is regulating parenting when a parent's activity harms a child's well-being.

California case law supports plaintiff's interpretation. California courts have consistently held that state child dependency proceedings in juvenile court are civil actions designed to protect the child, not reprove the parent for violating a prohibition. "The central purpose of dependency proceedings is to protect the welfare and best interests of the child, not to punish the parent." *In re Walter E.*, 13 Cal. App.4th 125, 137–38, 17 Cal.Rptr.2d 386 (1992). *See also In re Malinda S.*, 51 Cal.3d 368, 384, 272 Cal.Rptr. 787, 795 P.2d 1244 (1990) (superseded by statute on other grounds); *Collins v. Superior Court*, 74 Cal.App.3d 47, 52–53, 141 Cal.Rptr. 273 (1977). Parents have limited rights against DSS in the proceedings and cannot invoke the Fourth Amendment exclusionary rule or claim ineffective assistance of counsel on appeal. *In re Malinda S.*, 51 Cal.3d at 384–85, 272 Cal.Rptr. 787, 795 P.2d 1244. Even if there were some uncertainty as to the nature of these proceedings under California law, this uncertainty must be resolved in favor of Indian sovereignty. *Blackfeet Tribe*, 471 U.S. at 766, 105 S.Ct. 2399; *Confederated Tribes*, 938 F.2d at 149.

Although plaintiff has made a convincing argument based on Public Law 280 case law, her interpretation must ultimately fail because granting tribes exclusive jurisdiction over child custody proceedings would gravely undermine the ICWA statutory scheme, making its provisions illogical. By plaintiff's argument, state courts in Public Law 280 states would only have jurisdiction over private child custody pro-

ceedings regarding children living on a reservation, and over those "involuntary" child custody proceedings concerning Indian children who live off-reservation, because the parent, custodian or tribe did not petition for the proceedings to be transferred to the tribe, the tribal court did not accept jurisdiction, or the state court found "good cause" not to transfer the proceedings. 25 U.S.C. § 1911(a)-(b).

Plaintiff contends that such a limited state role is in line with Congress's intent to transfer the rest of the proceedings to tribes so they could apply their own culturally appropriate standards. Such an interpretation ignores the relevant legislative history. Congress appears to have drafted the exception in section 1911(a) in response to concerns voiced by the Departments of Interior and Justice about the place of Public Law 280 in the jurisdictional scheme. Thus, in a letter to the House committee, the Assistant Secretary of Interior stated: "We believe that reservations located in States subject to Public Law 83–280 should be specifically excluded from section 101(a) [1911(a)] ...." Indian Child Welfare Act of 1978, H.R.Rep. No. 95–1386, at 32 (July 24, 1978), *reprinted in* 1978 U.S.C.C.A.N. 7530 *et seq.* Patricia Wald, then Assistant Attorney General, wrote that a House draft of section 1911(a), "if read literally, would appear to displace any existing State court jurisdiction over these matters based on Public Law 83–280. We doubt that is the intent of the draft because, inter alia, there may not be in existence tribal courts to assume such State-court jurisdiction as would apparently be obliterated by this provision." *Id.* at 40.

Section 1918 of ICWA allows tribes subject to state jurisdiction under Public Law 280 to "reassume jurisdiction over child custody proceedings." 25 U.S.C. § 1918(a). In order to reassume jurisdiction, tribes must submit a "suitable plan" to the Secretary of Interior to show that reassumption is feasible. *Id.* The Secretary can consider the tribe's ability to identify its members, the size and population of the reservation, and the existence of other tribes in the area. *Id.* § (b)(1). Criteria include whether "[t]he constitution or other governing document, if any, of the petitioning tribe or tribes authorizes the tribal governing body or bodies to exercise jurisdiction over Indian child custody matters," the existence of a tribal court that "will be able to exercise jurisdiction over Indian child custody matters," and available "[c]hild care services sufficient to meet the needs of most children the tribal court finds must be removed from parental custody." 25 C.F.R. § 13.12.

Requiring tribes to petition the Secretary of Interior for reassumption over the few child custody proceedings that could be understood as private civil actions, such as private adoptions, is illogical if the tribes already have jurisdiction over most of the more difficult and resource-intensive involuntary proceedings, such as parental termination and foster care placement. Plaintiff contends that judicial interpretation of Public Law 280 was unsettled at the time Congress considered ICWA; therefore, Congress intended section 1918 to be a fail-safe provision for tribes to reassume jurisdiction if the courts found that Public Law 280 did apply to child custody proceedings. The court finds this argument unreasonable and without textual support. It seems much more likely that Congress assumed Public Law 280 did apply to a broad range of child custody proceedings and wanted to offer tribes who had the necessary structures the opportunity for self-governance.

Plaintiff does not contend that an Elem Indian Colony tribal court or other quasi-judicial body exists to hear this case. Although section 1911(a) of ICWA grants exclusive jurisdiction to tribes, not to tribal

courts, Congress was clearly concerned about the feasibility of tribal jurisdiction in section 1918, a concern echoed in the regulations governing reassumption. As Wald noted in her letter to the House committee, some tribes in Public Law 280 states may not have the administrative or judicial structures to hear child custody proceedings. Congress passed Public Law 280 because it was concerned about lawlessness on reservations and the inability of tribes to adequately enforce the laws. Although most courts have not addressed the adequacy of tribal institutions in interpreting the reach of Public Law 280, this Circuit did note the existence of laws and institutions in rejecting the state's argument for uniformity of speeding laws in *Confederated Tribes*, 938 F.2d at 149 n. 2. Rather than go down this road, the court will defer to the process Congress created.[2]

Therefore, unless plaintiff can demonstrate that the Elem Indian Colony has reassumed jurisdiction over child custody proceedings pursuant to section 1918 of ICWA, the court finds as a matter of law that plaintiff cannot state a claim for exclusive jurisdiction by the tribe.

## IV. *ICWA Procedural Requirements*

■ State court defendants next contend that the Superior Court did not violate any of the ICWA requirements in its

proceedings.[3] They first argue, relying on *In re Laura F.*, 83 Cal.App.4th 583, 99 Cal.Rptr.2d 859 (2000), that a state court need not accept the recommendation of a tribal resolution to give it full faith and credit. Defendants misunderstand the nature of a motion to dismiss. Section 1911(d) of ICWA provides that every state "shall give full faith and credit to the public acts, records and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." 25 U.S.C. § 1911(d). It is not beyond doubt that plaintiff can set forth facts showing the Superior Court failed to give credit to the tribal resolution. Such a possibility is all that is required. Thus, the court finds that plaintiff has stated a claim under section 1911(d).

■ Second, the state court defendants contend that section 1912(b) of ICWA, which provides an indigent parent or Indian custodian "the right to court-appointed counsel in any removal, placement, or termination proceeding," 25 U.S.C. § 1912(b), only requires a court to appoint counsel. Since the Superior Court appointed Wiley as counsel for Doe, plaintiff cannot state a claim. This court has found no federal case law interpreting the scope of this right.[4] Generally, there is no

2. For these reasons, the court finds it troubling that the Elem Indian Colony did not intercede in this action from the outset, including while the issue was in state court. After the oral argument on this motion, the Colony filed a motion to intervene; this motion is calendared for October 6, 2003.

3. The state court defendants also argue that plaintiff has not alleged sufficient facts to support her claim under section 1920 of ICWA. Section 1920 provides that a court "shall forthwith return the child to his parent" if a petitioner in a child custody proceeding "improperly removed the child from custody of the parent" or "has improperly re-

tained custody after a visit or other temporary relinquishment of custody." 25 U.S.C. § 1920. Among other allegations, plaintiff states that DSS failed to make active efforts to provide remedial services and rehabilitative programs and failed to show these efforts were unsuccessful. Compl. ¶ 64. Taken as true, these allegations support a claim under section 1920.

4. In Oregon, an appellate court found the standards of performance for court-appointed counsel under ICWA to be the same as those under a state statute granting counsel to indigent parents in termination hearings. *State*

constitutional right to effective counsel for indigent parties who are represented by court-appointed attorneys in civil cases. *Nicholson v. Rushen*, 767 F.2d 1426, 1427 (9th Cir.1985). Here, however, Congress has specifically mandated a right to counsel for indigent Indians. In light of Congress's concern that state judicial bodies have "failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families," 25 U.S.C. § 1901(5), the right to counsel must mean more than just the presence of a warm body. If the right is "construed liberally in favor of the Indians" and ambiguities are "interpreted to the Indians' benefit," *Native Village of Venetie*, 944 F.2d at 553, indigent Indians such as Doe are entitled to counsel who can effectively represent their interests. Plaintiff alleges that Wiley never met with her after the initial appointment, did not discuss the substantive issues of the case with her and did not consult her about her wishes for Jane. These allegations are sufficient to state a claim for violation of section 1912(b).

■ Third, the state court defendants contend that plaintiff cannot state a claim for violations of section 1915 of ICWA because there is no statutory cause of action. Plaintiff alleges that defendants failed to give Jane's extended family and other members of the Elem Indian Colony preference in pre-adoption and adoption placement, give effect to a tribal resolution that proposed the least restrictive setting appropriate to the needs of Jane, and apply the prevailing social and cultural standards of the Elem Indian Colony. *See* 25 U.S.C. § 1915(a)-(d). Section 1914 explicitly provides a cause of action to "invali-

date" foster care placement or termination of parental rights, but only "upon a showing that such action violated any provision of sections 1911, 1912, and 1913."

Defendants rely on *Navajo Nation v. Superior Court*, 47 F.Supp.2d 1233 (E.D.Wash.1999), *aff'd on other grounds*, 333 F.3d 1041 (9th Cir.2003), in which the court concluded there is no implied right of action for violations of section 1915. In deciding this issue, a court must primarily consider "whether Congress intended to create the private right asserted." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15–16, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). This court agrees with the analysis in *Navajo Nation*. There is no evidence in the text of section 1915, the structure of ICWA or the legislative history that Congress intended to create a cause of action for such violations. In specifically allowing plaintiffs to seek invalidation of a state court's actions based on sections 1911, 1912 and 1913, Congress showed it "knew how to [create a remedy] and did so expressly." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979).

Plaintiff asserts that the Ninth Circuit's reasoning in *Native Village of Venetie* counsels in favor of implying rights of action under ICWA. In *Native Village of Venetie*, the Circuit held there is an implied right of action in section 1911(d) for a tribe and adoptive parents to challenge the state's failure to give full faith and credit to the tribal court's adoption decrees. 944 F.2d at 554. The plaintiffs in *Native Village of Venetie* could not rely on section 1914, as the action was not "for foster care placement or termination of parental rights." 25 U.S.C. § 1914. In finding "no

*ex. rel Juvenile Dep't v. Charles*, 106 Or.App. 637, 810 P.2d 393, 395 (1991). In *V.F. v. State*, 666 P.2d 42, 45 (Alaska 1983), the Alaska Supreme Court noted that a right to effec-

tive assistance of counsel may be implied from ICWA but ultimately rested the right in the due process clause of the state constitution.

reason that Congress would not have intended to give Indian tribes access to federal courts to determine their rights and obligations under [ICWA]," the Circuit warned against "impos[ing] upon Indian law doctrines from other fields of law;" instead, statutes involving Indians should be liberally construed for the benefit of Indians. 944 F.2d at 553.

*Native Village of Venetie* does not stand for the proposition that a right of action may be implied under any provision of ICWA.[5] Section 1914 specifically gives a cause of action for invalidation of the underlying proceedings in this action—foster care placement and termination of parental rights. In contrast, the plaintiffs in *Native Village of Venetie* had no remedy to challenge the underlying proceedings unless the Circuit implied one. While this court is mindful that ambiguities in ICWA should be interpreted to benefit Indians, it seems clear from the text of section 1914 that Congress intended to provide a cause of action only for violations of three ICWA sections. Moreover, "the principles of federalism and comity that underlie the *Rooker–Feldman* doctrine," *Bianchi*, 334 F.3d at 902, weigh against implying a remedy where no affirmative evidence is present. It is entirely possible that Congress did not want federal courts to entangle themselves in questions about placement preferences. Thus, Doe has failed to state a claim for violations of section 1915.

## V. *Section 1983 Claim*

■ Finally, both defendants contend that Doe's section 1983 claim for ineffective assistance of counsel is barred by the statute of limitations. The statute of limitations for this section 1983 claim is one year. *See De Anza Props. X, Ltd. v. County of Santa Cruz,* 936 F.2d 1084, 1085 (9th Cir.1991).[6] Doe filed this complaint on July 18, 2002. Doe's parental rights were terminated on February 16, 2001. Doe had sixty days to file an appeal of that judgment, Cal. Rule of Court 39.1(f), but the court did not relieve Wiley of his duties until September 4, 2001. In fact, Wiley appeared at a permanency planning review hearing on August 20, 2001. In such a hearing, the court assesses whether the permanent plan for adoption or legal guardianship of the child is proceeding "as expeditiously as possible." Cal. Welf. & Inst.Code § 366.3(a). It appears, however, that Doe had no standing at the review hearing. *See id.* ("Following a termination of parental rights the parent or parents shall not be a party to, or receive notice of, any subsequent proceedings regarding the child."). As Doe may be able to put forth facts concerning Wiley's representation at the August 20, 2001 hearing that would entitle her to relief, however, she has stated a section 1983 claim.[7]

■ Judicial officers are not held liable for attorneys' fees under section 1988 un-

5. In *Navajo Nation,* the court interpreted plaintiff's cause of action in *Native Village of Venetie* as one under section 1983, 42 U.S.C. § 1983. *Navajo Nation,* 47 F.Supp.2d at 1243. This court finds no support for such an interpretation in *Native Village of Venetie.*

6. On January 1, 2003, the California legislature added section 335.1 to the California Code of Civil Procedure. Section 335.1 extends the statute of limitations to two years for actions involving "assault, battery or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

*See* Senate Bill No. 688. The terms of section 335.1 make plain that this change in statute of limitations does not apply retroactively, *see Krusesky v. Baugh,* 138 Cal.App.3d 562, 566, 188 Cal.Rptr. 57 (Cal.App.1982), so a one-year statute of limitations term applies here.

7. DSS also argues that Doe lacks standing to bring any action concerning proceedings that occurred after her parental rights were terminated. As this court has already determined that plaintiff cannot bring a claim based on section 1915 of ICWA, the court need not address this argument.

less the action was "in excess of such officer's jurisdiction." 42 U.S.C. § 1988(b). As it appears that plaintiff's request for attorney's fees is based entirely on her section 1983 claim for ineffective assistance of counsel, and plaintiff has not alleged how Judge Mann acted in excess of his jurisdiction in appointing Wiley, Doe's request for attorney's fees from Judge Mann is stricken.

## CONCLUSION

For the foregoing reasons, the court dismisses plaintiff's first claim for relief unless plaintiff provides evidence within thirty days that the Elem Indian Colony reassumed jurisdiction over child custody proceedings pursuant to ICWA section 1918. The court also dismisses those portions of plaintiff's second claim that allege violations of ICWA section 1915. Plaintiff's request for attorney's fees against Judge Mann is stricken.

Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.