**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICK O. OJO, Attorney, on
behalf of himself and all others
similarly situated,
                  *Plaintiff-Appellant,*

          v.

FARMERS GROUP, INC.; FIRE
UNDERWRITERS ASSOCIATION; FIRE
INSURANCE EXCHANGE; FARMERS
UNDERWRITERS ASSOCIATION
FARMERS INSURANCE EXCHANGE,
                  *Defendants-Appellees.*

No. 06-55522

D.C. No.
CV-05-05818-JFW

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted
November 6, 2007—Pasadena, California

Filed May 12, 2009

Before: Myron H. Bright,* Senior Circuit Judge,
Harry Pregerson and Carlos T. Bea, Circuit Judges.

Opinion by Judge Pregerson;
Dissent by Judge Bea

---

*The Honorable Myron H. Bright, Senior United States Circuit Judge
for the Eighth Circuit, sitting by designation.

## COUNSEL

Sanford Svetcov, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, San Francisco, California, for the plaintiffs-appellants.

Harriet S. Posner, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for the defendants-appellees.

## OPINION

PREGERSON, Circuit Judge:

## I.   Introduction

Patrick L. Ojo ("Ojo"), on behalf of himself and all others similarly situated,[1] appeals the district court's dismissal under Fed. R. Civ. P. 12(b)(1) of a class action suit brought against Farmers Group, Inc., and its affiliates, subsidiaries, and reinsurers (collectively "Farmers"). The Complaint alleges, *inter alia*,[2] disparate impact race discrimination in violation of the federal Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 et seq.

[1]Ojo sues on behalf of himself and on behalf of "minorities . . . who were issued [homeowner's] policies by Farmers . . . or who applied for" such policies, and "who received less favorable pricing than Caucasians as a result of the discriminatory credit evaluative and scoring system developed and administered by Farmers in violation of 42 U.S.C. § 3604." The Complaint "reasonably estimates that there are hundreds of thousands of persons" in the purported class.

[2]Counts II and III of the Complaint alleged violations of two state statutes: California's Fair Employment and Housing Act, Cal. Gov't Code §§ 12955 et seq. ("FEHA") (Count II), and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") (Count III). The district court concluded that it lacked diversity jurisdiction to hear these state law claims and dismissed them without prejudice. *Ojo v. Farmers Group, Inc.*, 2006 WL 4552707 at *20 (C.D. Cal. Mar. 7, 2006). Ojo does not appeal the district court's dismissal of those claims.

Ojo, an African-American resident of Houston, Texas, alleges that Farmers used "a number of undisclosed factors" to compute credit scores and price homeowners' insurance policies. As a result, "Farmers charged minorities higher premiums for homeowners' property and casualty insurance than the premiums charged to similarly situated Caucasians." Farmers moved to dismiss the Complaint under 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim.[3] The district court[4] granted Farmers' 12(b)(1) claim on the grounds that it was reverse-preempted by the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 et seq.

In dismissing Ojo's claim, the district court erred in two respects. First, the district court erroneously read Ojo's claim as challenging the practice of credit scoring *per se*. Second, the district court erroneously interpreted Texas state insurance law as permitting disparate impact race discrimination that results from credit scoring, thereby triggering McCarran-Ferguson reverse-preemption.

---

[3]The district court declined to reach the 12(b)(6) motion, stating that "[u]ntil it is assured that it has jurisdiction to hear the state law claims, the court declines to consider defendants' Rule 12(b)(6) challenge to those claims."

[4]The original district court proceeding occurred on January 3, 2006 before Judge Margaret M. Morrow, who took the case under submission. On January 28, 2006, Judge Morrow recused herself from the case, which was then reassigned to Judge John F. Walter. On February 26, 2007, Judge Walter granted Farmers' Motion to Dismiss without prejudice to Ojo filing an amended complaint within ten days, and adopted Judge Morrow's January 3, 2006 Tentative Order Granting Defendants' Motion to Dismiss Plaintiff's Complaint ("Tentative Order").

On March 6, 2007, Ojo notified the court that he would not file an amended complaint because he believed that it had been properly plead. He further requested that the district court "proceed and dismiss the Complaint so that final judgment may be entered." On March 7, 2007, Judge Walter dismissed Ojo's FHA claim with prejudice, dismissed the remaining two claims without prejudice to Ojo filing those claims in state court, and filed Judge Morrow's Tentative Order.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## II.   Background

### A.   *The Class Action Complaint*

Patrick L. Ojo is an African-American resident of Houston, Texas, and the owner of a homeowner's property and casualty policy issued by Farmers Group, Inc.[5] In January 2004, Farmers increased the premium on Ojo's homeowner's policy by nine percent, despite the fact that he had made no prior claims on the policy. Farmers allegedly advised Ojo that the increase was due to "unfavorable credit information" obtained through the company's automated credit scoring system (also referred to as Farmers' "automated risk assessment system").

According to Ojo, "[o]ver the years" Farmers has employed "geographical distinctions" and "various other artifices" to "identify and target minorities for the purpose of charging minorities higher premiums . . . than the premiums charged to similarly situated Caucasians." Specifically, he contends that the credit scoring system is a formula that uses "a number of undisclosed factors" to produce a credit score for each applicant for homeowners' property and casualty coverage.[6] The

---

[5]Farmers is a Nevada company with its principal place of business in the Central District of California. Farmers is also the parent company of the other defendant insurers (Fire Insurance Exchange, Farmers Insurance Exchange, Fire Underwriters Association and Farmers Underwriters Association), all of which are California corporations that are in the business of selling homeowners and fire insurance. Farmers sets its "credit scoring" pricing policies in its Los Angeles headquarters. Ojo asserts that Farmers and its various subsidiaries and affiliates have acted in concert in carrying out the discriminatory conduct alleged in his complaint.

[6]We note that Ojo's claim stems from Farmers increasing his premium on renewal of his existing policy. He contends that Farmers engages in the same discriminatory credit scoring process for current policyholders as it does for policyholders that are renewing an expiring policy.

Complaint further alleges that "[m]inorities as a group have lower credit scores than whites," and that the "effect of Farmers' credit scoring system is that minorities are charged [disparately] higher prices" in violation of the federal FHA.[7]

Ojo also alleges that Farmers has "vigorously defended" its use of this credit scoring system as "actuarially sound," whilst keeping secret the formula, the actuarial basis for the formula, and the specific credit factors which impact a policyholder's score. The result is that "the price an individual pays for a policy is largely dependent on a secret credit score allegedly justified by secret actuarial information." As a result of Farmers' unlawful practices, Ojo and those similarly situated "have lost and face losing millions of dollars in premiums paid" as a result of "overcharges due to racial discrimination."

B.　*The McCarran-Ferguson Act*

The McCarran-Ferguson Act ("McCarran-Ferguson" or "Act") provides that "[t]he business of insurance . . . shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). McCarran-Ferguson provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." *Id.* § 1012(b); *see als Humana Inc. v. Forsyth*, 525 U.S. 299, 306-07 (1999). In sum, the Act "establishes a form of inverse preemption" which prevents a federal law of general applicability from inadvertently impairing state laws

---

[7]Importantly, Ojo does not allege intentional discrimination. Rather, he asserts that Farmers discriminated and continues to discriminate against minorities in its underwriting, pricing, formation, administration, and renewal of policies by using "undisclosed factors" to compute credit scores which place minorities in substandard policies and which result in disparately higher premiums charged to minorities than are charged to similarly situated Caucasians.

regulating the business of insurance." *Id.*; *see also Merchants Home Delivery Serv. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir. 1995).

The Supreme Court has outlined the analytical framework for McCarran-Ferguson questions: "When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Humana*, 525 U.S. at 310. Stated differently, three requirements must be met before a state insurance law preempts a federal statute: "(1) the federal law in question must not be specifically directed at insurance regulation; (2) there must exist a particular state law (or declared regulatory policy) enacted for the purposes of regulating insurance; and (3) application of federal law to the controversy in question must *invalidate, impair or supersede* that state law." *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 295 (5th Cir. 2003) (emphasis added).[8]

The Supreme Court has defined the terms "invalidate, impair, [and] supersede" as they are enumerated in McCarran-Ferguson. "Invalidate" is defined as "render[ing] ineffective, generally without providing a replacement rule or law."

---

[8]The district court pointed out as a matter of history that the Ninth Circuit, in a decision that predated *Humana*, applied a four-factor test: "The McCarran-Ferguson Act precludes the application of a federal statute if: (1) the statute does not 'specifically relate' to the business of insurance, (2) the acts challenged under the statute constitute the business of insurance, (3) the state has enacted a law or laws regulating the challenged acts, and (4) the state law would be superseded, impaired or invalidated by the application of the federal statute." *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.*, 50 F.3d 1486, 1489. All of the four factors discussed in *Merchants Home* are covered by the *Humana* requirements, which we of course apply. The district court further noted that the Ninth Circuit's second prong of *Merchants Home* is "clearly satisfied here, since Ojo challenges the way in which Farmers uses credit information to assess risk and set policy rates." *See id.* at 490. We agree.

*Humana*, 525 U.S. at 307. "Supersede" is defined as "displac-[ing] (and thus render[ing] ineffective) while providing a substitute rule." *Id.*

As for "impair," *Humana* concluded that Congress did not intend for state insurance laws to completely and automatically preempt any federal statute not specifically directed at insurance regulation. 525 U.S. at 308 ("We reject any suggestion that Congress intended to cede the field of insurance regulation to the States, saving only instances in which Congress expressly orders otherwise."). While states have "administrative regimes and mechanisms in place to regulate insurance [fraud], the question is not whether the state administrative regime has 'occupied that field.' Instead, the question is whether the [state and federal] regulatory goals are in harmony." *Dehoyos*, 345 F.3d at 299 (quoting *Humana*, 525 U.S. 299).

*Humana* also held that when state law proscribes conduct similar to that proscribed by federal law, the fact that federal law provides *different* or *stronger* remedies does not bar application of federal law. *Humana*, 525 U.S. at 311-13 (emphasis added). In such circumstances, federal law complements, rather than impairs, frustrates or interferes with state law. *Id.* at 313.

## C.   *The Federal Fair Housing Act*

**[1]** The federal Fair Housing Act states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, *or in the provision of services or facilities in connection therewith*, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b) (emphasis added).

The Sixth and Seventh Circuits recognize that the FHA's ban on racial discrimination extends to the underwriting of homeowners' property insurance. *Nationwide Mut. Ins. Co. v.*

*Cisneros*, 52 F.3d 1351, 1359 (6th Cir. 1995) (concluding that no "Congressional intent [exists] to preclude the application of the Fair Housing Act to insurance underwriting practices"); *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 293 (7th Cir. 1992) (The federal Fair Housing Act "applies to discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race of the applicant"); *Nat'l Fair Housing Alliance, Inc. v. Prudential Ins. Co. of Am.*, 208 F.Supp.2d 46, 57 (D. D.C. 2002) ("The application of the FHA to homeowners insurance is fully consistent with the statute's purpose in eliminating discrimination resulting in segregated housing and lack of equal housing opportunities," citing *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 211-12 (1972)).

**[2]** While the federal FHA applies to cases involving discriminatory denials of homeowners' insurance to persons based on race, the Act is not specifically directed at insurance regulation. *See Cisneros*, 52 F.3d at 1360-61 ("[B]ecause the [FHA] does not mention insurance, it is covered by the McCarran-Ferguson Act and cannot be construed . . . to invalidate, impair or supersede any state law enacted to regulate the business of insurance"); *Am. Family Mut. Ins. Co.*, 978 F.2d at 298 (recognizing that the Fair Housing Act "does not mention insurers").

D. *Texas State Law*

**[3]** Like most states, Texas has a statutory scheme regulating the business of insurance. The Texas Insurance Code broadly prohibits unfair discrimination in the premium rate charged for insurance because of "race, color, religion or national origin," as well as "age, gender, or disability." Tex. Ins. Code § 544.002(a). Section 544.002(a) provides:

> A person may not refuse to insure or provide coverage to an individual, refuse to continue to insure or provide coverage to an individual, limit the amount,

extent, or kind of coverage available for an individual, or charge an individual a rate that is different from the rate charged to other individuals for the same coverage because of the individual's:

> (1)   race, color, religion, or national origin;

> (2)   age, gender, marital status, or geographic location; or

> (3)   disability or partial disability.

*Id.* Section § 544.003 contains various exceptions to certain subsections of § 544.002. Section 544.003(b) states that "a person does not violate Section 544.002(a)(2) [age, gender, marital status, or geographic location] or (3) [disability or partial disability]" if the increased insurance coverage charge "is based on sound underwriting or actuarial principles reasonably related to actual or anticipated loss experience." *Id.* § 544.003(b). Significantly, the district court emphasized that, "[d]iscrimination on the basis of race is conspicuously excluded" from the exceptions provided in § 544.003(b).

Subsection (c) of § 544.003 provides another exception to § 544.002: an insurer does not violate the unfair discrimination provision of § 544.002(a)(2) or (3) if the "refusal, limitation, or charge" is otherwise "required or authorized by law or a regulatory mandate."[9] Tex. Ins. Code § 544.003(c). This provision is particularly important because, in 2003, Texas enacted a new insurance law authorizing and regulating the use of credit scoring by insurers. Act of June 11, 2003, 78th Leg. ch. 206, 2003 Tex. Sess. Law Serv. 206 (Vernon), codi-

---

[9]As is the case with § 544.003(b), § 544.003(c) refers only to § 544.002(a)(2) and (3), conspicuously omitting any mention of § 544.002(a)(1), which is the subsection that prohibits race-based discrimination.

fied in Tex. Ins. Code § 559 et seq. (hereinafter "2003 credit scoring law"). In pertinent part, the 2003 credit scoring law requires insurers who use credit scores in underwriting to disclose certain credit scoring information, notify applicants of any adverse actions, and file their credit scoring models with the Texas Department of Insurance. Tex. Ins. Code §§ 559.053-559.054, § 559.151. Importantly, nowhere does Texas insurance law explicitly require insurers to file, reveal, or make known the *specific factors used* in its credit scoring models.

Farmers attempts to invoke the public filing requirements, enumerated in Tex. Ins. Codes §§ 559.053-559.054 and § 559.151, as a shield against any scrutiny of its credit scoring practices. But Ojo does not challenge Farmers' use of credit scoring *per se*. He challenges only the use of certain "undisclosed factors" *used in* Farmers' credit scoring model. The sections pertaining to filing requirements do not explicitly require that insurers file or make public the *specific factors* used in calculating a homeowner's risk assessment rate. Because Ojo should be permitted discovery so that he can "unearth[ ]" details—specific factors—regarding Farmers' homeowners' insurance credit scoring system, we reverse the district court. *See generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (recognizing that, at least insofar as a claim of employment discrimination is concerned, "[i]t may be difficult to define the precise formulation of the required prima facie case . . . before discovery has unearthed relevant facts and evidence."). Ojo deserves his day in court.

**[4]** Moreover, the 2003 Texas credit scoring legislation imposes another critical limitation on insurers doing business in that state. An insurer "may use credit scoring, *except for factors that constitute unfair discrimination*, to develop rates, rating classifications, or underwriting criteria." *Id.* § 559.051 (emphasis added). Section 559.002 makes actionable a violation of § 559.001: "An insurer may not use a credit score that is computed using factors that constitute unfair discrimina-

tion." *Id.* § 559.052. Furthermore, in the same 2003 legislation that authorized credit scoring, Texas also enacted a statute defining "unfairly discriminatory" for purposes of insurance rates "used under this code." Tex. Ins. Code art. 1.02(b). The statute provides, *inter alia*, that a rate is unfairly discriminatory if it is "based in whole or in part on the race . . . of the policyholder or an insured." Tex. Ins. Code art. 1.02(c)(3).

The 2003 credit scoring law also empowers the Texas Commissioner of Insurance ("Commissioner") to "adopt rules that prescribe the allowable differences in rates charged by insurers due solely to the difference in credit scores." *Id.* § 559.004(b). Accordingly, Farmers points to a regulation adopted by the Commissioner stating that differences in rates charged due "solely to credit scoring" are permissible, provided that they are "based on sound actuarial principles and supported by data filed with the department." 28 Tex. Admin. Code § 5.9941(a) (2008).

## III.   Standard of Review

We review *de novo* a district court's dismissal of a case on federal preemption grounds. *Olympic Pipe Line Co. v. City of Seattle*, 437 F.3d 872, 877 n.12 (9th Cir. 2006); *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000). We also review *de novo* a district court's interpretation of federal statutes. *Olympic Pipe Line Co.*, 437 F.3d at 872.

## IV.   Discussion

As stated earlier, the district court erred in two respects. First, it erroneously read Ojo's Complaint as challenging credit scoring *per se*, when in fact Ojo challenges only Farmers' use of certain "undisclosed factors" in credit scoring and the disparate impact that resulted. Second, the district court erred in concluding that Ojo's claim was reverse-preempted by the McCarran-Ferguson Act.

A. *The District Court Erred by Misinterpreting Ojo's Complaint*

When reviewing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "we must accept all factual allegations in the complaint as true." *Carson Harbor Village, Ltd. v. City of Carson*, 353 F.3d 824, 826 (9th Cir. 2004); *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). As the district court acknowledged, this requires a reviewing court to construe the "allegations in the complaint in the light most favorable to the plaintiff." *Ojo v. Farmers Group, Inc.*, 2006 WL 4552707 at *3 (citing *Doe v. Mann*, 285 F.Supp.2d 1229, 1232 (N.D. Cal. 2003)).

Ojo's Complaint alleges that Farmers' "credit scoring system has a disparate impact on minorities" because it uses "a number of undisclosed factors" and has resulted in "minorities [being] charged higher premiums for [p]olicies than Caucasians." Nowhere does the Complaint challenge credit scoring *per se*. Despite the lucidity of the Complaint, the district court nonetheless concluded that Ojo "challenges the very practice of credit scoring."[10] *Ojo* at *16. On that basis, the district court concluded that, if Ojo prevailed, then "his victory would likely render ineffective—and certainly frustrate and interfere with—Texas's . . . use of credit scoring models that are actuarially sound."[11] *Id.*

---

[10]The district court's conclusion here is somewhat baffling. The oral argument transcript, January 3, 2006, reveals the following. The district court asked Ojo's counsel to clarify the precise basis of the Complaint. Ojo's counsel responded: "[t]he basis of the [C]omplaint is that Farmers' system has a discriminatory impact. [We are] not taking on nor are we alleging that credit scoring is unlawful per se." The district court then proceeded to question counsel about the disparate impact claim.

[11]Farmers contends that "[i]n any event, whether Plaintiff challenges [credit] scoring generally, or simply the factors themselves, does not affect the outcome of the [C]ourt's McCarran-Ferguson analysis." Appellee's Br. at 12. Defendants are misguided. Understanding Ojo's specific allegations is, however, dispositive: if Ojo challenges credit scoring *per se*, his federal

**[5]** Read in the light most favorable to Ojo, the Complaint does not advance an "all or nothing" challenge to the practice of credit scoring. The Complaint alleges only that certain "undisclosed factors" used by Farmers in its credit scoring system produces a disparate impact on minorities. Therefore, the district court erred in concluding that Ojo's claim "impaired" Texas state law because the claim challenged credit scoring *per se*.

B.  *The District Court Erred in Dismissing Ojo's Claim Based on McCarran-Ferguson Reverse-Preemption*

**[6]** A claim is reverse-preempted by McCarran-Ferguson when a federal law of general applicability conflicts with a state law relating to the business of insurance and when applying the federal law would "frustrate any declared state policy or interfere with a State's administrative regime." *Humana*, 525 U.S. at 310. Importantly, where the state and federal "regulatory goals are in harmony," reverse-preemption is not triggered. *Dehoyos*, 345 F.3d at 299.

**[7]** The district court properly concluded that the first two prongs of the McCarran-Ferguson framework were satisfied: (1) the federal FHA is a law of general applicability; and (2) both the Texas Insurance Code and Texas's subsequent 2003 credit scoring law were enacted specifically to regulate insurance. As to the third prong, however, we hold that the district court erred in concluding that the federal FHA would "invalidate, impair, or supersede" Texas's state insurance law.

We review whether the district court was correct in concluding that Ojo's federal FHA claim "impairs" Texas state

FHA claim is susceptible to McCarran-Ferguson reverse-preemption. If, however, Ojo challenges only the use of certain discriminatory factors *in* credit scoring—as we hold that he does—then his federal disparate impact claim does not "directly conflict" with state law and he must be permitted to proceed in federal court.

law. As the district court stated, "[t]he question thus becomes whether Texas's [2003 credit scoring law] 'requires or authorizes' insurers to . . . charge different rates on the basis of credit information such that they are exempt from the general prohibition on discrimination set forth in Section 544.002 [of the Texas Insurance Code]." *Ojo* at \*11.

**[8]** The district court recognized that the 2003 "credit scoring [law] does not explicitly authorize the alleged disparate impact that results from credit scoring." *Ojo* at \*30 n.42. But based on its statutory analysis, the district court read the phrase in question, "*except for factors that constitute unfair discrimination*," Tex. Ins. Code § 559.051, as prohibiting only "disparate treatment based on invidious classifications, and not the use of actuarially sound credit scoring models that . . . disparately impact minorities." *Id.* For purposes of McCarran-Ferguson analysis, we hold that the district court erred in reading Texas insurance law as permitting disparate impact race discrimination resulting from credit scoring.

In interpreting the phrase "unfair discrimination," the district court applied Texas's rules of statutory construction: "[w]hen a statute is ambiguous, Texas courts 'must consider all laws *in pari materia*, meaning we are to consider all laws related to the subject of the act and the general system of legislation of which the act forms a part.' " *Ojo* at \*13 (citing *Collins v. City of El Paso*, 954 S.W.2d at 147). The district court stated, "[o]ur objective is to 'ascertain the consistent purpose of the [Texas] legislature in the enactment of the laws and to carry out the legislative intent by giving effect to all laws bearing on the same subject matter.' " *Id.* " 'The cardinal principle of statutory construction is to save and not to destroy. It is [the court's] duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section . . . .' " *Estate of Reynolds v. Martin*, 985 F.2d 470, 473 (9th Cir. 1993) (quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955)).

First, while the district court properly referred to the statutory construction principle of "consider[ing] all laws," the court failed to abide by that principle. In interpreting the phrase in question, "unfair discrimination," the district court failed to consider other important provisions within Texas law and its legislative history which prohibit "unfair discrimination" based on race.

**[9]** The most significant oversight was the district court's failure to consider that Texas's own Fair Housing Act prohibits disparate impact race discrimination. Tex. Prop. Code §§ 301.001 et seq. (2004) ("Texas FHA"). A court must consider " 'all laws related to the subject of the act [in question] and the general system of legislation of which the act forms a part.' " *Collins*, 954 S.W.2d at 147 (citation omitted). Here, the act in question is Texas's 2003 credit scoring law and the subject is disparate impact race discrimination resulting from Farmers' credit scoring system. The "general system of legislation" of which the 2003 credit scoring law forms a part is the Texas FHA.

**[10]** In enacting the Texas FHA, the Texas legislature sought to "provide rights and remedies substantially equivalent to those granted under federal law."[12] Tex. Prop. Code § 301.001, § 301.002(3), § 301.021(b); 24 C.F.R. § 100.70(d)(4); *see also Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 531 n.8 (5th Cir. 1996). The federal FHA prohibits both disparate treatment and disparate impact race discrimination. 42 U.S.C. §§ 3604 et seq. In implementing the Texas FHA, the state adopted a regulation

---

[12]Every circuit that has addressed this issue has held that federal race discrimination laws supplement, and are not preempted by, their state insurance law counterparts which also ban race discrimination. *Dehoyos*, 345 F.3d 290, 295 (5th Cir. 2003); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213-14 (11th Cir. 2001); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1356 (6th Cir. 1995); *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 293 (7th Cir. 1992); *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419 (4th Cir. 1984).

identical to the federal regulation that banned both intentional and disparate impact race discrimination by insurers in "refusing to provide" property insurance or providing such insurance "differently." 40 Tex. Admin. Code § 819.124(b)(4); 24 C.F.R. § 100.70(d)(4).

Considering all laws *in pari materia*, *Collins*, 954 S.W.2d at 147, we would be remiss in recognizing the Texas FHA's *prohibition against* disparate discrimination while condoning the district court's interpretation that Texas's credit scoring law *permits* the same. In failing to consider the Texas FHA, the district court erroneously concluded that the phrase "unfair discrimination," read in light of Texas's general system of legislation, permits disparate impact race discrimination by insurers.

The district court also failed to consider another Texas law that prohibits race-based discrimination: Texas Insurance Code article 1.02. Article 1.02(c)(3) states that an insurance rate is "unfairly discriminatory" if it is (i) not actuarially sound, (ii) not correlated to risk, *"or"* (iii) based "in whole or in part" on race. Tex. Ins. Code art. 1.02(c)(3) (emphasis added). The use of the disjunctive term "or" indicates that an insurance rate based on one factor (such as race) is unfairly discriminatory even though it may be actuarially sound and correlated to risk. *Pacific-Atlantic Trading*, 64 F.3d 1292, 1302 (9th Cir. 1995); *In re Porter*, 126 S.W.3d 708, 711 (Tex. App. 2004). Thus, Article 1.02(c)(3) further suggests that the district court erred in reading the phrase "unfair discrimination" as precluding disparate impact race discrimination.

Second, in addition to failing to consider "all laws *in pari materia*," the district court failed to apply the "cardinal principle" of statutory construction: "to save and not destroy." Applying that rule to the phrase "except for factors that constitute unfair discrimination" necessitates the conclusion that Texas insurance law prohibits *all* forms of "unfair discrimination," and not just one. Farmers, by contrast, urges us to bifur-

cate the phrase into two parts—disparate treatment and disparate impact discrimination—and to give meaning to one while flatly dismissing the other.[13] But we must " 'give effect to [a] statute as a whole, and not render it partially or entirely void.' " *Id.* (quoting *Bresgal v. Brock*, 843 F.2d 1163, 1166 (9th Cir. 1987)). Therefore, we understand "unfair discrimination" to prohibit both disparate treatment and disparate impact discrimination.

[11] Third, the district court overlooked that Texas's 2003 credit scoring laws themselves were designed to "prevent discrimination." The district court stated that the Texas legislature "authorized the practice of credit scoring to help 'creat[e] a transparent process that would protect consumers and prevent discrimination.' " *Ojo* at *14 (citing TX B. An., S.B. 14, 5/21/2003).

[12] It is difficult to imagine that a state legislature would at once seek to proscribe insurance practices that are "unfairly discriminatory as to race, color, religion, ethnicity, or national

---

[13]In support of this rhetorical bifurcation, Farmers relies almost exclusively on a January 31, 2005 letter from the Texas Insurance Commissioner ("Letter") and a Supplemental Report by the Texas Department of Insurance to the 79th Legislature titled, "Use of Credit Information by Insurers in Texas: The Multivariate Analysis: ("Supplement Report"). Neither of these documents was supplied with Farmers' moving papers. *Ojo* at *7 n.26. As the district court observed, it is generally "improper for the moving party to . . . introduce new facts or different legal arguments in the reply brief [beyond] . . . [those that were] presented in the moving papers." *Ojo* at *id.* (citing William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, *Federal Civil Procedure Before Trial*, § 12:107 (The Rutter Group 2005)). Nonetheless, after taking judicial notice of the two documents, the district court ultimately concluded that they lack the force of law. *Ojo* at *7 n.26.

We agree with the district court that, even if the Letter and the Supplemental Report could be said to declare Texas policy, the policy they delineate was not in effect at the time of Ojo's alleged injury in January 2004. Therefore, the district court declined to consider the documents as evidence and so do we. *Id.*

origin," and explicitly seek to "prevent discrimination," while permitting insurers to use a credit scoring system that results in disparate impact race discrimination. While the district court is correct that Texas's "clear legislative desire [was] to authorize at least some use of credit scoring," Texas's numerous prohibitions against any type of race-based discrimination certainly do not support the conclusion that the Texas legislature intended to permit disparate impact race discrimination.

Fourth, the district court erred in concluding that, because Texas law permits "differences in rates . . . due solely to credit scoring" so long as the differences are "based on sound actuarial principles," 28 Tex. Admin. Code § 5.9941(a), an actuarially sound system can inflict disparate impact discrimination on minorities and still be lawful. Texas insurance law "generally prohibits discrimination by insurers . . . ." Tex. Ins. Code § 544.002. This general prohibition, read together with Texas Insurance Code's "broad ban against discriminatory insurance practices," Tex. Ins. Code § 544.002d, strongly suggests that the 2003 credit scoring law was not intended to permit disparate impact discrimination on minorities.[14]

The Eleventh Circuit's decision in *Moore v. Liberty Nat'l Ins. Co*, 267 F.3d 1209, 1222 (11th Cir. 2001) is instructive. In interpreting whether McCarran-Ferguson reverse-preempted insurance discrimination claims brought by African American policyholders against an insurer, the court held:

---

[14]As discussed above in Section D, while § 544.003 sets forth exceptions to the "broad ban against discriminatory insurance practices" in § 544.002, provided that the "refusal, limitation or charge is based on sound underwriting or actuarial principles," Tex. Ins. Code. § 544.003(b), "*[d]iscrimination on the basis of race* is conspicuously *excluded*" from the list of exceptions. *Ojo* at \*11 (emphasis added). Other sections of the Texas Insurance Code specifically *include* "race" as a prohibited basis of discrimination. For the legislature to omit "race" from the exceptions enumerated in § 544.003, but permit discrimination based on "age, gender, and/or disability" further indicates that the Texas FHA prohibits both disparate treatment and disparate impact discrimination.

> We have not been directed to any relevant Alabama authority that has required, condoned, or suggested that racial distinctions in the provision of life insurance are acceptable. Indeed there is nothing in Alabama's insurance law that directs or encourages insurers to engage in such practices . . . .

*Moore*, 267 F.3d at 1222. Similar to the Texas law at issue here, the Alabama law at issue in *Moore* forbade "unfair discrimination" between individuals that occupied the same class of risks. *Id.* at 1220. In an argument similar to the one that Farmers posits, the insurer in *Moore* argued that Alabama permitted racial discrimination so long as it was actuarially based. *Id.* at 1220-21. The Eleventh Circuit rejected the insurer's argument and refused to "construe Alabama's scheme of insurance regulation in such a formalistic and narrow way." *Id.* at 1221.

[13] The *Moore* court concluded that, "absent . . . convincing evidence that racial discrimination in the insurance context is an integral part of Alabama's regulatory scheme," no direct conflict exists between the federal FHA and Alabama state law. *Id.* at 1222-23. Therefore, Moore's claims were not reverse-preempted by McCarran-Ferguson.[15] Because Texas law is similarly bereft of evidence that Texas "encourage[s] or condone[s] racial distinctions in the provision of . . . insurance," *Moore*, 267 F.3d at 1222, we hold that the federal FHA and Texas FHA are in regulatory harmony. Ojo's claim is therefore not reverse-preempted by McCarran-Ferguson.

---

[15]Here, the district court attempted to distinguish *Moore*, stating that "Farmers cites a statute that condones the very practice being challenged [here] — i.e., the use of credit information in insurance underwriting and rate making." *Ojo* at *16 n.42. As discussed above in Section IV (A), the district court erroneously read Ojo's Complaint as challenging credit scoring *per se*, when in fact the Complaint specifically challenges Farmers' use of a credit scoring system that results in disparate impact race discrimination. *Moore* is therefore apposite.

*Dehoyos v. Allstate Corp.*, 345 F.3d 290, 293 (5th Cir. 2003), further corroborates our decision. In *Dehoyos*, six non-Caucasian policyholders alleged that an insurance company's credit scoring system "targeted" minorities by placing them in more expensive policies based on credit report information. Plaintiffs brought a class action asserting violations of the federal FHA and of 42 U.S.C. §§ 1981 and 1982. Allstate moved to dismiss, citing McCarran-Ferguson reverse-preemption. The district court denied the motion to dismiss and the Fifth Circuit affirmed, holding that Allstate had failed to identify any state statute or "declared policy goal of [a] state scheme" that would be frustrated by application of federal laws. *Id.* at 299.

Our case is analogous to *Dehoyos*.[16] Here, Farmers has not identified any "declared policy goal" within Texas state law that permits disparate impact race discrimination. While *Dehoyos* was decided at a "preliminary stage of litigation" during which the district court decided not to differentiate between disparate treatment and disparate impact claims, 345 F.3d at 299 n.7, the court nonetheless rejected the insurer's claim that "disparate impact claims are particularly likely to impair state [insurance] law."[17] *Id.*

Lastly, we note the importance of a case decided after the district court decided *Ojo*. In *Lumpkin v. Farmers Group,*

---

[16]The district court attempts to distinguish *Dehoyos* because it was decided before Texas's 2003 credit scoring law went into effect. *Ojo* at *10. But, as we have explained, the 2003 credit scoring law did not broaden the ambit within which an insurer is permitted to discriminate against minority homeowners. Texas law prohibits "unfair discrimination" based on race—be it disparate treatment or disparate impact. Therefore, *Dehoyos* is instructive.

[17]The majority also explicitly rejected the *Dehoyos* dissent's argument that disparate impact claims would impair Texas law. *Dehoyos*, 345 F.3d at 299 n.7 ("The dissent reiterates [Allstates'] argument but offers no more convincing evidence that disparate impact suits will necessarily impair state insurance regulation.").

*Inc.*, No. 05-cv-02868-SHM (W.D. Tenn. April 16, 2007, reconsideration denied July 6, 2007), a case involving an almost-identical set of facts as those before us, the district court held that Tennessee state insurance law—which is almost identical to Texas insurance law—created no distinction between intentional and disparate impact discrimination. On that basis, the *Lumpkin* district court denied the insurer's motion to dismiss based on McCarran-Ferguson reverse-preemption.

Lumpkin, an African-American plaintiff, on behalf of herself and all others similarly situated, brought a class action against Farmers alleging disparate impact race discrimination in the issuance and pricing of homeowners' insurance policies, in violation of the federal Fair Housing Act. In a claim almost identical to Ojo's, Lumpkin alleged that Farmers' credit scoring system resulted in disparately high premiums charged to racial minorities than those afforded to similarly situated Caucasians. *Lumpkin*, Order Denying Def.'s Motion to Dismiss ("Order Denying MTD") at 3. Farmers moved to dismiss on the grounds that McCarran-Ferguson barred Lumpkin's claim because Tennessee law prohibited disparate treatment discrimination, but not disparate impact. *Id.*

For purposes of the McCarran-Ferguson analysis, we note that Tennessee insurance law is almost identical to its Texas counterpart.[18] In pertinent part, Tennessee prohibits insurers

---

[18]Texas and Tennessee both define a "credit score" or an "insurance score" as a "number or rating . . . derived from an algorithm, computer application, model, or other process that is based . . . on credit information [for the purposes of] predicting the future insurance loss exposure . . . ." Tenn. Code Ann. § 56-5-401(7); § 559.001(8)(A)(B). Like Texas, Tennessee addresses restrictions on the use of credit scores by any insurers in that respective state. Tenn. Code Ann. § 56-5-401 *et seq.* (2006); Tex. Ins. Code §§ 559.101 and 559.052. Tennessee and Texas also both require insurers who use credit scores to file their scoring models with their respective states' insurance departments. Tenn. Code Ann. § 56-5-405; Tex. Ins. Code § 559.151.

from using an "insurance score that is calculated using . . . [an] ethnic group" as a negative factor in any insurance scoring methodology. *Id.* at 13. Similarly, Texas prevents an insurer from calculating a credit score using "factors that constitute unfair discrimination," Tex. Ins. Code § 559.151, and prevents an insurer from "us[ing] a credit score that is computed using factors that constitute unfair discrimination." Tex. Ins. Code § 559.052.

In denying Farmers' motion to dismiss, *Lumpkin* expressly rejected Farmers' reading of Tennessee law—the same reading that Farmers' urges us to adopt here. *Lumpkin*, Order Denying Mot. for Recons. at 16. There, the phrase that required interpretation was "unfairly discriminatory." *Id.* Just as the district court did here, *Lumpkin* looked to other provisions of state law to interpret whether "unfairly discriminatory" permitted disparate impact race discrimination. The *Lumpkin* court concluded that Farmers "fail[ed] to show how Tennessee . . . permits disparate impact in insurance rates between Caucasians and non-Caucasians." *Id.* at 17.

The *Lumpkin* court went on to explain that a "distinction between intentional discrimination and disparate impact [discrimination] . . . has not been recognized in controlling case law and is not mandated by Tennessee insurance law." *Id.* at 10. Significantly, the district court also stated that, "[e]ven if such a distinction were acknowledged by courts, careful scrutiny of the Tennessee insurance law scheme indicates that *Defendants' motion to dismiss should have been denied because Tennessee insurance law does not create such a distinction.*" *Id.* (emphasis added).

The *Lumpkin* court criticized Farmers for reading the phrase "unfairly discriminatory" "too broadly to permit disparate impact as long as the rates are actuarially sound." *Id.* It stated that "the goals of federal and Tennessee law are the same, preventing impermissible racial and ethnic discrimination," and that "the two bodies of law can be applied in har-

mony to effect that purpose." Order Denying MTD at 14. *Lumpkin* is indistinguishable from the case here: the goals of the federal FHA and Texas FHA, including the 2003 credit scoring law, are to prevent unlawful discrimination based on race, regardless of whether the discrimination involves disparate treatment or disparate impact.

## V. Conclusion

**[14]** The district court erred by misconstruing Ojo's Complaint as challenging credit scoring *per se*, when in fact it only challenged Farmers' use of credit scoring that resulted in disparate impact discrimination against minorities. The district court also erred in interpreting Texas's 2003 credit scoring law as permitting disparate impact race discrimination despite evidence that the Texas legislature intended to prohibit insurers from engaging in "unfair discrimination." Because Ojo's federal FHA claim was not reverse-preempted by McCarran-Ferguson, the district court erred in dismissing Ojo's Complaint under Fed. R. Civ. P. 12(b)(1).

**[15]** We therefore reverse and remand to the district court to allow Ojo's federal FHA claim to proceed.

**REVERSED AND REMANDED.**

---

BEA, Circuit Judge, dissenting:

I respectfully dissent because the district court got it precisely right: Ojo's complaint does not state a valid claim for relief because it does not allege that Farmers uses any race-based considerations in its credit scoring system for the computation of insurance premiums. That is an essential allegation in a disparate treatment claim under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 *et seq.*

But, the majority opinion is correct that Ojo's claim is not really a disparate treatment claim, but is a disparate impact claim. Maj. Op. at 5701-02. All right then, why isn't his claim nonetheless valid as a disparate impact claim? Because— again, as the district court correctly determined—Texas insurance law, unlike the FHA, makes it perfectly legal to use credit scores to price insurance policies, even if doing so causes a disparate impact on racial minorities, so long as race is not used as a criteria in computing the credit scores. But, of course, he doesn't allege race is used as a factor. Therefore, he fails to allege a viable claim for relief under either a disparate treatment or a disparate impact theory.

Ojo does allege that Farmer's race-neutral policy of using credit scores to price insurance policies results in a disparate impact on racial minorities. To make out a claim under Texas law, Ojo needs to allege that Farmers uses race either (1) directly to price policies or (2) as a factor in determining a credit score that is used to price policies. Texas law allows the use of credit scores to price policies where race is not a factor in the computation of the credit score, even if such use happens to have a disparate impact on racial minorities. Tex. Ins. Code §§ 544.003(c), 559.051 (Vernon 2005); 28 Tex. Admin. Code § 5.9941(a).

Accordingly, the application of a federal law, such as the FHA, which does *not* allow such use of credit scores if the credit scores have a disparate impact would invalidate, impair, or supersede Texas law. Thus, under the McCarran-Ferguson Act, the district court was correct when it found that Texas law reverse preempts the claims Ojo makes under federal law, and was correct in dismissing the case for lack of federal jurisdiction.[1]

---

[1]The McCarran-Ferguson Act declares, "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). It further provides: "No act of Congress shall be con-

The majority holds two things: (1) Ojo's complaint adequately states a claim for relief for disparate impact racial discrimination in violation of the FHA; and (2) Texas insurance law does not apply to effect a reverse preemption of the FHA because Ojo has alleged that "undisclosed factors" were used by Farmers in computing its credit scoring. Those undisclosed factors, as alleged by Ojo, are interpreted by the majority as perhaps including race-based considerations. Such race-based considerations would be equally illegal under the FHA and Texas insurance law. Where both state and federal law prohibit a practice, the McCarran-Ferguson Act does not provide for reverse preemption. Therefore, the majority reasons, if discovery uncovers that race-based considerations were a factor in Farmers's credit scoring algorithms, and such credit

_____

strued to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance . . . ." 15 U.S.C. § 1012(b). Accordingly, Congress has made the decision that state statutes that specifically relate to the business of insurance prevail over federal statutes that do not. *See Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co. Inc.*, 50 F.3d 1486, 1488-89 (9th Cir. 1995). Thus, where a general federal law conflicts with a state insurance law, the state law "reverse-preempts" the federal law. We are so accustomed to federal law preempting state law that in the odd case where the contrary happens, we have come to describe it with the phrase reverse preemption. *See Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co., Inc.*, 50 F.3d 1486, 1488-89 (9th Cir. 1995) (construing the McCarran-Ferguson Act).

Under *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), there are three requirements for the McCarran-Ferguson Act to trigger such state law preemption of federal law: "(1) the federal law in question must not be specifically directed at insurance regulation; (2) there must exist a particular state law (or declared regulatory policy) enacted for the purpose of regulating insurance; and (3) application of federal law to the controversy in question must invalidate, impair or supersede that state law." *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 295 (5th Cir. 2003). The parties agree the first two prongs of this test are met. The only question is whether application of the federal FHA invalidates, impairs, or supersedes the Texas Insurance Code.

scores caused disproportionately higher insurance premiums to be charged to racial minorities, then Ojo has alleged a valid class action claim under both federal and Texas law. This reasoning sounds like it runs on rails, but there are actually several problems with it.

### Ojo Failed to Plead a Disparate Impact Claim Under Texas Law Because, under Texas Law, There Is No Such Thing

The majority correctly describes Ojo's complaint as a disparate impact claim under the FHA. In paragraph 18 of his complaint, Ojo directly complained of Farmers's use of credit data to underwrite and price homeowners insurance policies by alleging:

> The automated credit scoring program has an adverse impact on minorities. Minorities as a group have lower credit scores than whites. The effect of Farmers' credit scoring system is that minorities are charged higher premiums.

As is clear from this allegation, the majority is simply wrong when it says that Ojo does not challenge Farmers' use of credit scores *per se*. That is exactly what the above allegation challenges.

A measure has a disparate impact on a racial group when its effect has a higher incidence in that group than in similarly situated groups of other races. There are no disparate impact cases under the FHA (Title VIII). The closest cases are found in federal employment discrimination cases (Title VII).

By citing Ojo's allegations of "undisclosed factors" which *perhaps* could be race-based considerations, the majority appears to confuse disparate treatment and disparate impact claims. Unlike a disparate treatment claim, a disparate impact discrimination claim does *not* require proof of intentional

racial discrimination. *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986 (1988). In federal disparate impact cases under Title VII, after the plaintiff makes a prima facie showing that a facially neutral practice has a disparate impact on racial minorities, the burden of proof shifts to the defendant to justify the practice as a business necessity. *Connecticut v. Teal*, 457 U.S. 440, 446-47 (1982).

Even under statutes that allow an action for claims based on disparate impact, such as Title VII, not all measures that have a disparate impact are actionable. For instance, in *Association of Mexican-American Educators v. California*, 231 F.3d 572, 584 (9th Cir. 2000) (en banc), we held that where the State gave teachers a legitimate test of the skills needed for their positions, the state had a valid affirmative defense that its test was a "business necessity." This is also the statutory standard under Title VII—an employer can defend a prima facie disparate impact case by proving business necessity. Thus, the state was not liable.

By contrast, where a test was given that did not relate to the skills needed for the position, that measure was actionable. "[D]iscriminatory tests are impermissible unless shown, by professionally acceptable methods, to be predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which candidates are being evaluated." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 431 (1975).

Texas insurance law differs from federal law when the practice being challenged is the use of credit scores to price homeowners insurance. Texas law allows the use of credit scores, without an insurance company having to prove in each case that the use of credit scores satisfies a business necessity. In effect, Texas law has already decided that the use of credit scores to price homeowners insurance constitutes a valid business necessity; a defendant does not have to prove such business necessity in each case.

The Texas Insurance Code specifically allows an insurer to use a policy holder's credit score in the pricing of its policies, so long as the insurance company does not use race as a factor in computing the credit score:

> An insurer may use credit scoring, except for factors that constitute unfair discrimination, to develop rates, rating classifications, or underwriting criteria regarding lines of insurance subject to this chapter.

Tex. Ins. Code § 559.051 (Vernon 2005). Insurance companies may set "differences in rates . . . due solely to credit scoring," as long as these differences are "based on sound actuarial principles." 28 Tex. Admin. Code § 5.9941(a).

Texas law also provides that the use of credit scores is allowed *even if* it has a disparate impact on racial minorities. Subsection (c) of § 544.003 states, "A person does not violate Section 544.002 [unfair discrimination based on race] if the refusal, limitation, or charge is required or *authorized* by law or a regulatory mandate," as is the use of credit scores. Tex. Ins. Code § 544.003(c) (emphasis added). This is an exception to *all* of the discriminatory bases prohibited by § 544.002, including race.

Given that Texas law specifically authorizes the use of credit scores, even if that practice results in a disparate impact on racial minorities, application of the FHA—which would require a defendant to justify the use of credit scores as a business necessity in each case—would invalidate, impair, or supersede the application of Texas law. This means that under the McCarran-Ferguson Act, Texas law reverse-preempts the FHA. Because Ojo cannot rely on federal law, the district court lacked federal jurisdiction.

To avoid the application of the McCarran-Ferguson Act, Ojo needed to have alleged a practice that violated not only federal law, but also Texas law. What Ojo needed to have

alleged is that Farmers uses race-based considerations in its credit scoring algorithms.

Which brings us to the question on which this case turns: Did Ojo adequately allege that Farmers's credit scoring uses race-based considerations when he alleged Farmers used "undisclosed factors" in computing a policyholder's credit score? Under the pleading standards set forth in *Bell Atlantic, Inc. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007), the answer is clearly "No."

**Ojo Did Not Plead a Claim of Racial Discrimination**

The majority holds that when a plaintiff pleads the defendant is doing something unknown to harm the plaintiff, the court can fill in the missing facts and presume the plaintiff has pleaded the facts necessary to state a claim for relief. This holding could have far reaching implications because now the great unknown would conceivably save every complaint from a motion to dismiss.

Perhaps recognizing that Ojo does not have a valid disparate impact claim, the majority actually fills in the gaps in Ojo's complaint to provide him with a disparate treatment claim.

Both the FHA and Texas law contain provisions prohibiting discrimination based on race in certain commercial situations. The FHA does not directly address the sale of homeowners insurance, but it does state it is unlawful to discriminate against any person in the provision of services in connection with the sale or rental of a dwelling because of that person's race. 42 U.S.C. § 3604(a) & (b). This statute is the basis of Ojo's claim for relief.

Our court has not yet decided whether the FHA applies to discrimination claims with respect of the sale of homeowners insurance. The Sixth and Seventh Circuits have decided the

FHA *does* apply to a disparate treatment claim in the sale of homeowners insurance. *See Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1359 (6th Cir. 1995); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992). The Fourth Circuit held the FHA does *not* apply to homeowners insurance. *Mackey v. Nationwide Ins. Cos.*, 724 F.2d 419, 424 (4th Cir. 1984).[2] The majority wisely refrains from deciding whether the FHA applies to either a disparate treatment claim or a disparate impact claim in the sale of homeowners insurance.

Under Texas insurance law an insurance company cannot use race as a factor in setting premiums. *See* Tex. Ins. Code art. 1.02(c)(3); Tex. Ins. Code §544.002(a) (Vernon 2005). Similarly, insurance companies cannot compute a credit score "using factors that constitute unfair discrimination," such as race. Tex. Ins. Code § 559.052(a); *see also* Tex. Ins. Code § 559.051.

But Ojo does not allege that Farmers uses race either directly to set pricing or indirectly as a factor in its calculation of a policyholder's credit score, which is in turn used to set pricing. All he alleges is that certain "undisclosed factors" are used.

---

[2]Note that no court has held that the FHA applies to claims of disparate impact. The Sixth and Seventh Circuits recognized only claims of disparate treatment, which may explain why the majority is willing to rewrite Ojo's complaint for him to allege a disparate treatment claim. Indeed, the Seventh Circuit was careful to make this distinction. "Because the district judge dismissed claims under Title VIII and Wisconsin's insurance code in advance of discovery, we must assume that plaintiffs can establish that the defendant intentionally discriminates on account of race. That is, we must assume that the plaintiffs can establish disparate treatment and not just a disparate impact of decisions made on actuarial grounds. The distinction is important not only because the Supreme Court has yet to decide whether practices with disparate impact violate Title VIII, see *Huntington v. NAACP*, 488 U.S. 15 (1988), but also because of the nature of insurance." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d at 290.

The Supreme Court has made clear that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1964-65 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action.")).

In *Bell Atlantic*, the Court held that allegations of parallel conduct by the defendants in an antitrust case were insufficient to survive a motion to dismiss because that parallel conduct could just as easily result from sound business decisions independently made by each defendant, as from an agreement to collude with one another to fix prices.

It is just as plausible that the undisclosed factors upon which Farmers relies in its credit score computations are race-neutral. The disparate impact could as easily be caused by a legacy of historical societal discrimination and mistreatment, with which Farmers had nothing to do. To state a claim of disparate treatment, the complaint must allege that Farmers uses race as a factor in computing credit scores.

Here, to remedy Ojo's deficient complaint, *the majority reads disparate racial treatment allegations into Ojo's complaint*—and does so without a great deal of sense given that an insurance company's credit scoring methodology is not undisclosed; it is a matter of public record filed with the Texas Insurance Commissioner.

Insurance companies in Texas using credit scores to price their policies are required to disclose certain credit scoring information, notify applicants of any adverse actions, and file the company's credit scoring models with the Commissioner of Texas Department of Insurance, who is authorized to resolve any disputes. Tex. Ins. Code §§ 559.053-559.054, 559.151. Any party dissatisfied with an action of the Commis-

sioner "may file a petition for judicial review against the Commissioner as defendant," but such review is available only after the party fails to get relief from the Commissioner. Tex. Ins. Code § 36.202(a). Ojo does not allege that Farmers failed to file its algorithms and processes with the Texas Department of Insurance as required. Nor does Ojo allege he filed a complaint with the Commissioner to discover the credit scoring algorithms and factors, much less that any such complaint to the Commissioner would be unavailing.

Because this appeal from the district court's grant of a motion to dismiss requires us to accept the facts pleaded by the plaintiff as true, we accept that minorities as a group have lower credit scores than non-minorities. But we need not accept that minorities' lower credit scores are caused by Farmers using race as a factor in the computation of credit scores because no such allegation is pleaded. Only speculation can bridge the gap between the facts pleaded in Ojo's complaint and the majority's conclusion that Ojo sufficiently stated a claim for disparate racial treatment.

Since Ojo's complaint does not allege that Farmers intentionally discriminated against minorities based on race, and it does not allege that Farmers used race as a factor in computing credit scores, Ojo has not alleged a cognizable claim of racial discrimination based on disparate treatment. We cannot imply such allegations where none exist. We especially ought not imply such allegations where the plaintiff was given leave to amend his complaint and did not do so, as Ojo did.[3]

---

[3]Ojo did not allege race-based considerations were used in computing Farmers's algorithms and consequent credit scoring. Given the opportunity to amend his complaint to so allege, counsel for plaintiffs refused to do so, thus loyally complying with Federal Rule of Civil Procedure 11. Of course, counsel's position is understandable given that all insurers in Texas that use credit scores in their pricing must file their algorithms with the Texas Department of Insurance.

The pleading standards of *Bell Atlantic* apply to this case because this is a class action, which raises a high risk of abusive discovery. The Court has held that, "[o]n certain subjects understood to raise a high risk of abusive litigation, a plaintiff must state factual allegations with greater particularity than Rule 8 requires." 127 S. Ct. at 1974 n.14 (citing Fed. R. Civ. P. 9(b)-(c)). The Supreme Court and our court have since routinely applied *Bell Atlantic* in antitrust cases[4] and in non-antitrust class actions, such as this one.[5]

But even under the lesser standard of Federal Rule of Civil Procedure 8(a)(2), this complaint still does not allege facts sufficient to survive a motion to dismiss. A plaintiff has a duty under Rule 8(a)(2) to provide "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*, 127 S. Ct. at 1963-69. The "grounds" to which Rule 8(a)(2) refers are the *facts* showing the plaintiff is entitled to relief. *Id.* Here, there are no facts alleged that Farmers discriminated on the basis of race. What there is is speculation that some undisclosed factors *may* be racially discriminatory.

---

[4]*See, e.g.*, *Pacific Bell Tel. Co. v. Linkline Commc'ns, Inc.*, 129 S. Ct. 1109, 1112, 1114, 1123 (2009) (antitrust class action applying *Bell Atlantic*); *Rick-Mik Enter., Inc. v. Equilon Enters.*, 532 F.3d 963, 966-67, 970 (9th Cir. 2008) (antitrust class action holding that for the purposes of antitrust litigation, *Bell Atlantic* applies); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1044, 1047 (9th Cir. 2008) (same); *Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 891, 905 (9th Cir. 2008) (same).

[5]*See, e.g.*, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 986-87, 989-90 (9th Cir. 2009) (securities fraud class action applying *Bell Atlantic*), *amended on other grounds by* 2009 WL 311070 (9th Cir. Feb. 10, 2009); *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1050, 1055, 1057 (9th Cir. 2008) (same); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936, 938 (9th Cir. 2008) (applying *Bell Atlantic* to a class action under California law); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1117, 1022 (9th Cir. 2008) (same).

It's as simple as this: *Bell Atlantic* laid down the rules for class action pleading. Class action litigation is too expensive to allow a plaintiff to engage in discovery unless and until the plaintiff can at least in good faith allege the defendant has done something prohibited by law.

Ojo has not done so here. For that reason, I would affirm the district court, and respectfully dissent from the majority opinion