688 N.W.2d 491 (2004)
In the Interest of D.H., a Minor Child, M.H., Father, Appellant.
No. 04-0743.
Court of Appeals of Iowa.
July 28, 2004.
*492 Amanda M. DeMichelis, of the Bull Law Office, P.C., Des Moines, for appellant-father.
Thomas J. Miller, Attorney General, Tabitha Gardner, Assistant Attorney General, John P. Sarcone, County Attorney, and Jennifer Galloway, Assistant County Attorney, for appellee-State.
Cynthia Tofflemire, Des Moines, for the mother.
Christine Bisignano, Des Moines, for the child.
Considered by VOGEL, P.J., and HECHT and VAITHESWARAN, JJ., but decided en banc.
VAITHESWARAN, J.
Mike is the father of Danae, born in 1990. Danae was adjudicated a child in need of assistance in 1995 based on physical abuse by her mother. She remained a child in need of assistance due to ongoing drug abuse by her mother and a repetition of the physical abuse. As a teenager, Danae disclosed that she had also been abused sexually by her father.
Mike's parental rights to Danae were terminated in 2004. On appeal, Mike does not challenge the grounds for termination. Instead, he contends: 1) the Federal and State Indian Child Welfare Acts apply but were not followed, 2) the State did not properly serve him with the petition for termination of parental rights, and 3) termination was not in the child's best interests.
I. Mike raises the Indian Child Welfare Acts for the first time on appeal. *493 He states that the juvenile court did not determine whether Danae was an "Indian child" within the meaning of the two Acts. As to the Federal Act (25 U.S.C. §§ 1901-63), Mike failed to preserve this issue for appellate review. In re J.D.B., 584 N.W.2d 577, 581 (Iowa Ct.App.1998).
Regarding the Iowa Indian Child Welfare Act (Iowa Code ch. 232B (Supp. 2003)), we will assume without deciding that the challenge may be raised for the first time on appeal. Mike correctly notes that Iowa Code section 232B.4(2) requires a party seeking termination of parental rights over an Indian child to determine whether the child is an Indian child. The required inquiry is necessary when a child could be, but is not known to be, an Indian child.
We are not convinced this provision creates a broad duty to inquire of every child's status as an "Indian child" in every proceeding that may theoretically be covered by chapter 232B. The duty of inquiry is qualified by section 232B.5(3), which provides that the court or a party is "deemed to know or have reason to know that an Indian child" is the subject of an action where 1) the court or party "has been informed ... that the child is or may be an Indian child," 2) the child "gives the court reason to believe that the child is an Indian child," or 3) the court or party "has reason to believe" that the child resides or is domiciled in "a predominantly Indian community." Reading sections 232B.4(2) and 232B.5(3) together, as we must, we conclude that the section 232B.4(2) duty of inquiry concerning a potential Indian child's status is triggered only by the circumstances set forth in Iowa Code section 232B.5(3).
Applying Iowa Code section 232B.5(3) to the record and argument before us, we find no evidence that 1) Mike or anyone else informed the court Danae is or may be an Indian child, 2) would have given the court reason to believe she was an Indian child, or 3) Danae resides in a predominately Indian community. Therefore, there is no need for an inquiry into her status as a potential Indian child.
II. Mike next contends the record only discloses that he was served with the original notice and not with the petition for termination of parental rights. See In re S.P., 672 N.W.2d 842, 846 (Iowa 2003) (noting order void as to parent who has no notice of proceeding). The record reveals that the Tazewell County Sheriff in Illinois file stamped an original notice and personally served Mike with a "notice." Included with the return of service was the file stamped original notice, which made explicit reference to "a petition in the above entitled action, a copy of which is attached hereto." Cf. Chader v. Wilkins, 226 Iowa 417, 420, 284 N.W. 183, 185 (1939) (citation omitted) (stating, absent "clear and satisfactory proof" to the contrary, we presume that a return of service correctly states the manner of service"). We conclude Mike was properly served with the termination petition.
III. Mike finally argues that termination is not in Danae's best interests because her maternal grandmother is willing and able to care for the child as she has in the past. See Iowa Code § 232.116(3)(a) (stating court need not terminate parental rights if "relative has legal custody of child"). He also argues "the child should have been called upon to state her views on the termination." Id. § 232.116(3)(b) (stating court need not terminate if "child is over ten years old and objects to the termination").
It is true that Danae's grandmother was her caretaker for much of the nine-year period preceding termination. However, Danae was removed from the grandmother's home in early 2003 when an investigation revealed that she failed to protect Danae from recurring physical abuse by *494 her mother. Following that removal, Danae was placed in foster care, then in a shelter, and finally at a facility providing residential treatment services.
Meanwhile, Mike was sentenced to a 180 month prison term for conspiring to sell methamphetamine. Even before his incarceration, he was only seeing his daughter once a year. His prospects for renewing contact with her were faint, given a confirmed report that he sexually abused her as well as recent revelations by Danae that the abuse was more extensive than she first disclosed.
At the time of the termination hearing, Danae suffered from conduct disorder, post-traumatic stress disorder, and depressive disorder. Her move to a restrictive setting was precipitated by "out of control" behaviors which included setting a fire in a school bathroom, running away from home, using crack cocaine, sexually abusing two children, and attempting suicide.
As for Danae's views concerning termination of her father's parental rights, there is no evidence that Mike asked to have her testify at the termination hearing. There is also no evidence to suggest Danae wished to maintain a relationship with her father.
On our de novo review, we conclude termination of Mike's parental rights to Danae was in her best interests.
AFFIRMED.
All judges concur except SACKETT, C.J., who partially dissents.
SACKETT, C.J. (concurs in part and dissents in part).
I concur in part and dissent in part. I would order a limited remand.
An allegation has been made for the first time on appeal that no inquiry was made as to D.H.'s possible Indian heritage, as required under Iowa Code section 232B.4 (Supp.2003), and that the termination should be reversed because of the failure of an inquiry. I agree strongly with the State and the majority that this alone is not grounds for reversal. But I would not end our inquiry on this issue there. Rather, I would remand by order to the juvenile court to hold a hearing to determine the Indian status, if any, of this child.
I recognize, as the majority found, there is no real evidence that the child would qualify as an Indian child. Yet the State has failed to state in its petition that either there is evidence the child qualified under the federal or state Indian Child Welfare Act[1] or there is not evidence the child qualified under either act.[2] Furthermore, there is no real evidence the child does not qualify under either act. If, as the allegation for reversal suggests, the father's current attorney has evidence that the child would qualify, that evidence can only be entered in the record with a remand.[3] Consequently, if this challenge can first be *495 made on appeal as this court is doing,[4] the only way to intelligently address the issue is to remand for further proceedings, an alternative suggested by the State.
The majority has held that the need for the court to inquire as to the child's status is only triggered by the circumstances set forth in Iowa Code section 232B.5(3) and apparently only at the trial court level, yet they address it without the juvenile court having had an opportunity to do so. The whole Iowa statutory scheme of chapter 232B has wide-open definitions of an Indian child[5] and places substantial burdens on both the court and the State to make inquiry.[6] Additionally, the failure to correctly identify a child as an Indian child could result in a termination being set aside in an action filed under the federal Indian Child Welfare Act.
25 U.S.C. § 1914 (2002) provides:
Any Indian child who is the subject to any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of section 1911, 1912 and 1913 of this act.[7]
Section 1912 provides for a state court[8] that knows or has reason to know the child may be subject to the federal act to notify certain persons in a certain manner and to do certain other things that did not happen in this case. A failure to comply with these provisions could invalidate this termination procedure. See Doe v. Mann, 285 F.Supp.2d 1229, 1233 (N.D.Cal.2003) (noting a tribal member is not precluded from bringing a federal court action challenging the state court's child custody determination as a violation of the Indian Child Welfare Act, the issue not having been raised or adjudicated in state court).
I understand that we have a responsibility to see parental termination cases are handled expeditiously. But the short time necessary to remand for a hearing is insignificant when compared with the time that the termination order could be held in limbo by further litigation challenging the termination should the child qualify under either or both the federal and state acts.
The better practice, it would appear, is for the State that has responsibility for determining the child's status to include an allegation in its petitions that a basic inquiry has been made and there is or is not evidence the child qualifies under the Act. The better practice for us is to take those precautions necessary to strictly comply with both acts making further litigation less likely and to assure that termination *496 orders from Iowa courts shall withstand challenges under the federal act.
NOTES
[1] Iowa Code chapter 232B contains the Iowa Indian Child Welfare Act. The federal Indian Child Welfare Act is found in 25 U.S.C. §§ 1901-63 (2002).
[2] By the time of a termination hearing, the State has gathered substantial evidence on the child and his or her family and I would suggest that the better practice would be for the State to make such an allegation. In saying this, I do not suggest that the failure to do so in and of itself is grounds for a reversal, as I have agreed with the State and the majority it does not.
[3] Any attorney raising this issue at the appellate level should have evidence that the child qualifies or evidence that raises a debatable question as to whether the child qualifies. Any attorney representing a party in juvenile court who has evidence the child may qualify would have an obligation to make that evidence known to the court and not wait to raise the issue for the first time on appeal.
[4] In saying this I recognize the majority has elected not to raise the preservation issue raised by the State.
[5] Iowa Code § 232B.3(6).
[6] Iowa Code § 232B.5.
[7] Iowa Code 232B.5(2) provides:

The federal Indian child Welfare Act and this chapter are applicable without exception in any child custody proceedings. A state court does not have the discretion to determine the applicability of the federal Indian Child Welfare Act or this chapter to a child custody proceeding based upon whether an Indian child is part of an existing Indian family.
Iowa Code § 232B.5(2).
[8] Whether this statute also puts these requirements on an appellate court when it is the first to be advised there may be a question of the child's eligibility is not clear.