# IN THE COURT OF APPEALS OF IOWA

No. 4-070 / 13-1975
Filed February 19, 2014

**IN THE INTEREST OF A.R.,**
   **Minor Child,**

**M.R., Father,**
   Appellant,

**M.L., Mother,**
   Appellant.

_____

Appeal from the Iowa District Court for Marshall County, Stephen A. Owen, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS**.

John J. Haney of Hinshaw, Danielson & Haney, P.C., Marshalltown, for appellant-father.

Jeffrey P. Hazen of Grimes, Buck, Schoell Beach & Hitchins, Marshalltown, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Jennifer Miller, County Attorney, and Luke B. Hansen, Assistant County Attorney, for appellee.

Mary Cowdrey of Public Defender's Office, Marshalltown, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

The juvenile court terminated the parental rights of A.R.'s mother and father—reaching the "unmistakable" conclusion they could not reunite with their six-year-old daughter because they failed to timely address their long history of serious drug abuse. The parents separately appeal the termination order. The mother, Megan, asserts A.R. can be returned to her care at the House of Mercy, an in-patient addiction treatment program and argues terminating her parental rights is not in A.R.'s best interests. The father, Michael, argues the State did not meet its burden of proof on the statutory grounds for termination.

The district court engaged in thorough fact finding and sound legal analysis. Our de novo review of the record leads us to the same conclusion: clear and convincing evidence supports severing the legal ties of A.R.'s birth parents. A.R.'s need for stability, safety, and long-term nurturing and growth are best served by allowing her maternal great aunt to move toward adoption. We affirm on both appeals.

## I.    Background Facts and Proceedings

Her parents' entanglement with methamphetamine first endangered A.R. when she was just three months old. A drug raid at her home in April 2008 resulted in a court-ordered removal. The Department of Human Services (DHS) placed A.R. with her maternal grandmother. Megan lived there as well, and she completed outpatient treatment and complied with drug testing. The DHS closed its case.

But Megan started using methamphetamine again in 2011. The court adjudicated A.R. as a child-in-need-of-assistance (CINA) in January 2012. A.R. has been living with her great aunt since that time. Megan has had supervised visitation. By her own admission, Megan used drugs consistently between July and November of 2012. She entered outpatient treatment in October 2012 and reported completing that program in March 2013. Megan did not receive any substance abuse treatment between March and August 2013.

A.R.'s father, Michael, also has an extensive history of using illegal drugs, as well as a criminal record including domestic violence offenses. He did not participate in substance abuse treatment or any counseling services offered by the DHS. Michael has reported being diagnosed with bipolar disorder and schizophrenia. According to witnesses, Michael has been angry, aggressive, and unstable during the CINA case. Court security had to escort him from the courthouse due to his behavior at a June 2013 hearing. The DHS reported not having contact with Michael since July 2013.

The State filed a petition to terminate parental rights on July 9, 2013. The petition cited Iowa Code sections 232.116(1)(f) and (*l*) (2013). On August 14, 2013, five weeks after the State filed the petition, Megan checked herself into the House of Mercy's inpatient substance abuse treatment program. Megan was homeless and nearly nine months pregnant when she checked into the program. She gave birth in late August to another daughter, who lived with her at the House of Mercy at the time of the termination hearing. Michael is also the father

of that child. Megan is allowed to stay at the House of Mercy for up to two years, but is free to leave at any time.

The juvenile court held a termination hearing on November 19, 2013. Megan testified she started using drugs when she was thirteen years old and first tried methamphetamine at age nineteen. Methamphetamine has been her "drug of choice" since then. Megan was twenty-eight-years old at the time of the termination order. She told the juvenile court the last time she used drugs was November 2, 2012. But the DHS social worker testified it was not likely the House of Mercy would have admitted Megan into an in-patient substance abuse program if she was not currently abusing drugs.

Michael failed to attend the termination hearing, despite notice of the proceedings. Michael's attorney did not know why his client was not in attendance. On December 2, 2013, the court issued its order terminating the rights of the father and mother on both grounds listed in the State's petition. The parents filed separate appeals.

## II.     Standard of Review

We review terminations de novo. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). We examine both the facts and law, and adjudicate anew those issues properly preserved and presented. *In re L.G.*, 532 N.W.2d 478, 480–81 (Iowa Ct. App. 1995). We accord considerable weight to the findings of the trial court, especially concerning the credibility of witnesses, but are not bound by them. *Id.* at 481.

We will uphold a termination order if we find clear and convincing supporting any of the statutory grounds relied upon by the juvenile court. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "Evidence is 'clear and convincing' when there are no serious or substantial doubts as to the correctness of conclusions of law drawn from the evidence." *Id.* (internal quotation omitted).

## III.    Analysis

For both parents, the termination order cited two grounds for termination: Iowa Code section 232.116(1)(f)[1] and section 232.116(1)(l).[2]  When the juvenile court relies on more than one statutory basis, we may affirm on any ground supported by clear and convincing evidence.  *Id.* at 707.  We will address each parent's claim in turn.

### A.    Father's appeal

Michael's petition on appeal makes a bare-bones assertion the State did not meet its burden of presenting clear and convincing evidence warranting

---

[1]  The court may order termination if it finds all of the following have occurred:
(1) The child is four years of age or older. (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96. (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.  (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[2]  The court may order termination if it finds all of the following have occurred:
(1) The child has been adjudicated a child in need of assistance pursuant to section 232.96 and custody has been transferred from the child's parents for placement pursuant to section 232.102.  (2) The parent has a severe substance-related disorder and presents a danger to self or others as evidenced by prior acts.  (3) There is clear and convincing evidence that the parent's prognosis indicates that the child will not be able to be returned to the custody of the parent within a reasonable period of time considering the child's age and need for a permanent home.

termination of his parental rights. Michael does not pinpoint which elements the State failed to establish. And he does not assert A.R. could have been returned to his care at the time of the termination hearing.

We affirm the termination of Michael's parental rights based under section 232.116(1)(f). That section requires clear and convincing proof the child cannot be returned to the parents "at the present time." "At the present time," as used in section 232.116(1)(f)(4) means at the time of the termination hearing. Despite a return of service and a publication notice, Michael did not personally appear at the termination hearing, and his attorney did not know how to contact him. The father's disinterest in the proceedings underscores that A.R. could not be presently returned to his care. Moreover, we share the juvenile court's concern regarding Michael's history of substance abuse, criminality, and unstable behavior. Michael did not follow through with any evaluations, counseling, or services recommended by the DHS to address his long-standing substance abuse problem. Accordingly, the State proved by clear and convincing evidence he could not provide a safe home environment for A.R.

Michael also raises a hearsay challenge to letters from A.R.'s therapist describing the child's high degree of stress during the separation from her parents. The juvenile court expressly stated that it gave little weight to those exhibits and would have reached the same conclusion based on other testimony concerning the child's anxiety related to the uncertainty of her situation. Assuming without deciding the disputed exhibits were inadmissible, we

concluded Michael suffered no prejudice. *See In re A.S.*, 743 N.W.2d 865, 869 (Iowa Ct. App. 2007).

Furthermore, Michael cites Iowa Code section 232.116(3) and notes A.R. is in a relative placement. A juvenile court "need not terminate" if "a relative has legal custody of the child." Iowa Code § 232.116(3)(a); *In re D.H.*, 688 N.W.2d 491, 493–94 (Iowa Ct. App. 2004). It is true A.R.'s great aunt has been her caretaker throughout the CINA case. But given Michael's lack of participation in services and the faint prospect of him renewing safe and meaningful contact with his daughter, we do not find the relative placement was cause for the juvenile court to defer termination of the father's rights.

### B. Mother's appeal

Megan contests the juvenile court's conclusion that clear and convincing evidence supported termination of her parental rights under sections 232.116(1)(f) and (*l*). She argues the court was wrong in determining A.R. could not be returned to her at the time of the termination hearing. Megan contends she could provide a secure residence for A.R. at the House of Mercy where she is engaged in substance abuse treatment.

Like the district court, we conclude the State offered clear and convincing evidence justifying termination under section 232.116(1)(f). During the more than two years A.R. has been removed for her care, Megan has never progressed from fully-supervised visitation. She continually struggled with substance abuse and housing issues. Only after the State petitioned to terminate her rights to A.R., and when she was nine months pregnant with A.R.'s sister, did Megan

seek in-patient drug treatment. At the termination hearing, Megan acknowledged it would not be in A.R's best interests to "just up and move her to me." Megan testified, "If she was returned to my care, I would prefer that she is transitioned back to me and start out with, like, weekends, overnights, or you know, slowly move her back into me and not upset her schooling and not upset, you know, her whole life."

We agree with the juvenile court's determination A.R. could not be presently returned to Megan's care. Megan's attempts to become clean, for her own sake and that of her new baby, are commendable. But they come too late and are too nascent to prompt reunification with A.R. As the State points out in its brief, Megan's long-term housing situation is still precarious, as she cannot permanently stay at the House of Mercy. Moreover, Megan's commitment to ending her unhealthy relationship with Michael remains untested. A.R. cannot be kept waiting while Megan works to overcome her addiction and attain stability. *See In re J.A.D.-F.*, 776 N.W.2d 879, 885 (Iowa Ct. App. 2009).

We also reject Megan's argument that termination of her parental rights is not in A.R.'s best interests. *See* Iowa Code § 232.116(2). "Section 232.116(2) requires us to 'give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

The juvenile court succinctly described relevant considerations:

The child's safety is best ensured by the termination of parental rights as both the child's mother and father have severe and

chronic substance abuse addictions. While the child's mother has engaged in inpatient substance abuse services, these services have only been in place for 3 months. The child has already been removed from her parents for over two years. As [Megan] testified, the House of Mercy program may last for up to 2 years. By that time the child will be nearly 8 years old.

The court rightly recognized A.R. has developed a strong bond with her great aunt, who is willing to adopt A.R. A.R. enjoys a comfortable routine in the great aunt's home; she is making friends at school and has joined Girl Scouts. On her own, A.R. has started referring to the great aunt as "Mommy." By contrast, A.R. has a less strong relationship with Megan. The DHS worker testified A.R. looks forward to visits with Megan, but mostly because A.R. is excited to see her baby sister. The worker also believes interactions with the parents have caused A.R. ongoing anxiety, manifesting itself in bed-wetting and bad dreams.

For the reasons discussed above, we conclude the State proved by clear and convincing evidence that the parental rights of Megan and Michael should be terminated. We also agree with the juvenile court's assessment that termination is in A.R.'s best interests.

**AFFIRMED ON BOTH APPEALS.**